[Civ. No. 22746. Fourth Dist., Div. One. May 28, 1981.]

COMMON CAUSE et al., Plaintiffs and Appellants, v.
LARRY STIRLING, as City Councilman, etc., et al., Defendants
and Respondents.

COUNSEL

Sullivan, Jones & Archer, Robert L. Simmons, James C. Krause, Benjamin & Sutton and William M. Benjamin for Plaintiffs and Appellants.

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, and James J. Thomson, Jr., Deputy City Attorney, for Defendants and Respondents.

OPINION

WIENER, J.—We discuss in this appeal the standards which govern a trial court's award of attorney's fees under Government Code section 54960.5[1] to a prevailing plaintiff in a private action against a public entity found to have violated the Brown Act. (§ 54950 et seq.)

Common Cause and one of its members, Carolyn Sutton Eckmann, obtained a judgment declaring defendant members of the San Diego City Council (City Council) violated the Brown Act by taking official action in secret. They now challenge the court's refusal to award them attorney's fees. As we will explain, we conclude the court's failure to properly exercise its discretion in denying attorney's fees under section 54960.5 requires reversal to allow further proceedings consistent with this opinion.

*Factual and Procedural Background*

The parties stipulated to the facts underlying this dispute.

On July 29, 1977, following public hearings and studies, the City Council directed the city attorney to file eminent domain actions in or-

---

[1]All statutory references are to the Government Code unless otherwise specified. Section 54960.5 provides: "A court may award court costs and reasonable attorney fees to the plaintiff in an action brought pursuant to Section 54960 where it is found that the local agency has violated the provisions of this article. Such costs and fees shall be paid by the local agency and shall not become a personal liability of any public officer or employee thereof.

"A court may award court costs and reasonable attorney fees to a defendant in any action brought pursuant to Section 54960 where the defendant has prevailed in a final determination of such action and the court finds that the action was clearly frivolous and totally lacking in merit."

der to acquire two parcels of land for a park in the Rolando-Clay area of San Diego. The actions were filed on December 10, 1977. On January 23, 1978, before the city property department had discharged its responsibility of serving the summons, one councilman asked the city manager to delay service for one week to allow the City Council to reconsider the condemnation. By January 29, 1978, after the City Council had taken no further action on the condemnation matter, the city manager directed the property department to resume attempts at service of the summons. Three days later, the city manager received a letter dated January 31, bearing the signature of six council members directing him not to serve the summons. The letter requested deferral of service because the City Council planned to reopen the issue to consider facts including the possibility of avoiding condemnation. Upon receipt of that letter, the city manager ordered a suspension of efforts to serve the parties.

The letter was followed by a public meeting, noticed on February 6, and held on February 28, 1978, in which the City Council voted to formally instruct the city manager not to serve the summons and to abandon the eminent domain action.

On February 8, certain individuals wrote to the city attorney requesting an investigation of possible Brown Act violations because of the private letter of January 31, directing delay of service of summons. The city attorney responded in a letter dated February 21, expressing his opinion the city had not violated the Brown Act because the letter of the 31st was neither a meeting nor a decision. About a month later, Common Cause responded by providing the city attorney with a memorandum drafted by its attorney members giving reasons why it believed the actions violated the Brown Act. After the city attorney promptly replied expressing his opinion once again that no violation had occurred, Eckmann and Common Cause filed their action for declaratory relief pursuant to section 54960.[2]

The trial court found the letter of January 31, 1978, violated the provisions of the Brown Act and retained jurisdiction to consider applications for fees and costs. After hearing plaintiffs' request for fees, the

---

[2]Section 54960 provides: "Any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency or to determine the applicability of this chapter to actions or threatened future action of the legislative body."

court made a second order which reiterated the earlier finding of a Brown Act violation, but determined attorney's fees were not appropriate. The court concluded, under Code of Civil Procedure section 1021.5, the statute permitting attorney's fees in private attorney general's actions, that fees could not be awarded because the benefit the action conferred on the public did not "measure up to the standard of significance dictated by *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303], ... and *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200]." It further found section 54960.5 (*ante* fn. 1) established no criteria for awarding attorney's fees and stated, "This court concludes that no fees should be awarded under section 54960.5 of the Government Code."

*Discussion*

The trial court correctly noted that, unlike Code of Civil Procedure section 1021.5, there are no express criteria governing the discretionary award of attorney's fees in Brown Act cases. Code of Civil Procedure section 1021.5 provides for fees in actions resulting in the "... enforcement of an important right affecting the public interest," if a significant benefit has been conferred on the public, the necessity and financial burden of private enforcement are such as to make the award appropriate and such fees should not, in the interest of justice, be paid out of the recovery, if any. (See Code Civ. Proc., § 1021.5.) Apparently, because section 54960.5 does not provide for standards and because no cases have furnished criteria, the trial court felt it could incorporate the standards of Code of Civil Procedure section 1021.5 into the older Brown Act. **(1)** For reasons we state, we conclude there is no authority for the retroactive application of the specific standards of different statutes. We also hold the trial court ruling which effectively merges the two statutes is contrary to federal precedent and counterproductive to the purposes of the Brown Act.

In *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612], the United States Supreme Court held federal courts could not award attorney's fees in private attorney general actions without specific statutory authorization, on the rationale that Congress had preempted capacity to shift fees in actions based upon statutory law by explicitly directing payment of such fees only when it deemed such actions desirable. (*Id.*, at pp. 261-262 [44 L.Ed.2d at pp. 155-156].) Code of Civil Procedure section 1021.5 is thought to

be our Legislature's response to *Alyeska.* (See *Review of Selected 1977 California Legislation,* 9 Pacific L.J. 281, 365-367.) The statute was signed almost contemporaneously with the filing of *Serrano* v. *Priest, supra,* 20 Cal.3d 25 [*Serrano III*], the case which partly rejected *Alyeska* for California and held California courts have inherent equitable power to award attorney's fees in cases brought to vindicate policies based on the state Constitution. The statute (Code Civ. Proc., § 1021.5) broadened the *Serrano III* holding by extending that power to cases of public significance, whether or not constitutional rights were vindicated. (See discussion in *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 929-930.) There is no historical indication Code of Civil Procedure section 1021.5 was intended to affect already existing specific statutory fee provisions, such as section 54960.5. Rather, Code of Civil Procedure section 1021.5 was intended to provide specific guidelines for the exercise of inherent judicial power to award fees not specifically authorized by statute.

Section 54960.5 of the Brown Act was enacted two years earlier along with a virtually identical provision (§ 11130.5) applicable to state agencies under the State Agency Open Meeting Act (§ 11120 et seq.), in order to encourage private enforcement of the policy favoring public agency procedures. (See No. 6 Deering's Adv. Legis. Service (1975) ch. 959, p. 272.) The legislative history of the Brown Act recognized from its enactment the need to encourage private enforcement because lack of judicial interpretation hampered the act's effectiveness and penalties for noncompliance would otherwise be inadequate. (12 Assem. Interim Com. Rep., No. 10, Governmental Organization, The Right to Know, in 2 Appen. to Assem. J. (1965 Reg. Sess.) at pp. 13, 48, 49.) The Brown Act provision permitting a discretionary award of attorney's fees without listing the special requirements for the award, is thus analogous to federal statutes such as the Civil Rights Act which provide for payment of attorney's fees without special qualification, because in the absence of such provision there would be little incentive to bring such lawsuits. Looking to federal precedent, we are guided by the leading case of *Newman* v. *Piggie Park Enterprises* (1968) 390 U.S. 400 [19 L.Ed.2d 1263, 88 S.Ct. 964]. In interpreting provisions of the Civil Rights Act (42 U.S.C. § 2000a-3(b)) which allow the prevailing party a reasonable attorney's fee in the court's discretion, *Newman* held attorney's fees are presumptively appropriate to the plaintiff unless the defendant can come forward to show "... special circumstances would render such an award unjust." (390 U.S. at p. 402 [19 L.Ed.2d at p. 1266].) That approach has been followed not only under the Civil Rights Act (e.g., *Air*

*Lines Stewards, etc., Loc. 550* v. *American Airlines, Inc.* (7th Cir. 1972) 455 F.2d 101, 107, cert. den. (1974) 416 U.S. 993 [40 L.Ed.2d 773, 94 S.Ct. 2406]), but also under other public interest statutes permitting fees. (For example, *Torres* v. *Sachs* (2d Cir. 1976) 538 F.2d 10, 12-13, fn. 2 [Voting Rights Act]; *Northcross* v. *Memphis Board of Education* (1973) 412 U.S. 427, 428 [37 L.Ed.2d 48, 50-51, 93 S.Ct. 2201, 2202] [Emergency School Aid Act]; *Save our Sound Fisheries Ass'n* v. *Callaway* (D.R.I. 1977) 429 F.Supp. 1136, 1145-1146 [Federal Water Pollution Control Act of 1972].) Like all these cases, the Brown Act provides specific legislative authorization for attorney's fees in actions brought to enforce a public policy in a context where actual recoverable damages are likely to be trivial. The damage is to the public integrity, and the fees are designed to make it economically feasible to rectify that damage by private legal means.

Here, the trial court found the action "resulted in the enforcement of an important right affecting the public interest" and "a benefit has been conferred upon the general public," but because the benefit was not as significant as that involved in *Serrano III*, 20 Cal.3d 25, and *Woodland Hills, supra*, 23 Cal.3d 917, it held attorney's fees were improper under Code of Civil Procedure section 1021.5. Brown Act actions, however, involving local agencies will rarely, if ever, have the statewide significance of the issues of, for instance, *Serrano III*, dealing with the funding of the public schools. Nevertheless, regardless of the local nature of the agency, the Legislature has declared the goals of the Brown Act to be vital and of statewide significance. Section 54950[3] furthers the goal of public discussion and decision making in government which is inherent in a democratic political system and has been strongly supported in judicial and scholarly precedent. (See, e.g., Brandeis, Other People's Money (1933) p. 62 ["Sunlight is said to be the best of disinfectants; electric light the most efficient policeman"]; *Nebraska Press Assn.* v. *Stuart* (1976) 427 U.S. 539, 587 [49 L.Ed.2d 683, 713-714, 96 S.Ct. 2791, 2816] (Brennan, J., conc.); Comment, *Access to Government Information* (1966) 54 Cal.L.Rev. 1650; Note, *Open Meeting Statutes: The Press Fights for the "Right to Know"* (1962) 75

---

[3]Section 54950 provides: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

"The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created."

Harv.L.Rev. 1199; *Estate of Hearst* (1977) 67 Cal.App.3d 777, 784 [136 Cal.Rptr. 821] ["... the public has a legitimate interest in access to public records, ... If public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism."].) Because the Legislature specifically authorized attorney fees in a Brown Act case, before *Serrano III* had been decided, clearly it intended such awards to be made in matters of local significance. The statute does not require that fees can be awarded only when issues of statewide or federal significance are involved.

Our comments, however, should not be interpreted as indicating that a trial court must award attorney's fees to a prevailing plaintiff in every Brown Act violation. A court must still thoughtfully exercise its power under section 54960.5 examining all the circumstances of a given case to determine whether awarding fees under the statute would be unjust with the burden of showing such inequity resting on the defendant. For example, in *Aho v. Clark* (9th Cir. 1979) 608 F.2d 365, an order denying attorney's fees under the Civil Rights Act was affirmed because the award of fees might have altered the consequences of the settlement reached by the parties, defendants were already in the process of remedying the program at issue and attorney's fees were not essential to attract competent counsel. (*Id.*, at pp. 366-368; see also *Zarcone v. Perry* (2d Cir. 1978) 581 F.2d 1039, 1044, cert. den. (1979) 439 U.S. 1072 [59 L.Ed.2d 38, 99 S.Ct. 843].) Without limitation, some other considerations which the court should weigh in exercising its discretion include the necessity for the lawsuit, lack of injury to the public, the likelihood the problem would have been solved by other means and the likelihood of recurrence of the unlawful act in the absence of the lawsuit.

*Disposition*

The judgment is reversed and the cause is remanded in order that the trial court may consider the suitability of an award of attorney's fees under section 54960.5 in accordance with the principles we have stated.

Todd (R. C.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.

**COLOGNE, Acting P. J.**—I must respectfully dissent.

Authority for the award of attorney fees and costs in actions of this general nature is available in Code of Civil Procedure section 1021.5 which reads: "Upon motion, *a court may award attorneys' fees to a successful party* against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest *if:* (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) *the necessity* and financial burden *of private enforcement* [*is*] *such as to make the award appropriate*, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor." (Italics added.)

In *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303], the court awarded attorney fees under an equitable principle permitting the successful party in this sort of action to recover his expenses as a "private attorney general" for bringing about benefits to a broad class of citizens (*id.* at pp. 43-47). This theory was statutorily added to the law through the adoption of Code of Civil Procedure section 1021.5 quoted above (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 928, 930-931 [154 Cal.Rptr. 503, 593 P.2d 200]). The equitable principles authorizing payment of attorney fees were discussed by the court in *Serrano* which pointed out two bases upon which the court may award attorney fees: the first is the common fund principle, not applicable here, and the second is the substantial benefit rule. The latter rule holds when a class action or corporate derivative action results in the conferral of substantial benefits, whether of a pecuniary or nonpecuniary nature, upon the defendant in such an action, that defendant may, in the exercise of the court's equitable discretion, be required to yield some of those benefits in the form of an award of attorney fees (see 20 Cal.3d at p. 38). *Serrano* v. *Priest* went on to use a third theory, "private attorney general" concept, to award attorney fees where the successful suit brings about benefits to a broad class of citizens by effectuating a strong public policy (see 20 Cal.3d at p. 43).

Other California cases awarding attorney fees on the substantial benefit theory have not had the statewide impact that was present in *Serrano* v. *Priest, supra*, 20 Cal.3d 25 (see 23 Cal.3d at pp. 945-946),

and it is not likely there will be any such case in the foreseeable future. The benefits in each of the cases have nevertheless been real and substantial to the entity involved, as noted by *Serrano*. The public community most directly benefited by the decision is the appropriate target for significance evaluation.

In *Knoff* v. *City and County of San Francisco* (1969) 1 Cal.App.3d 184 [81 Cal.Rptr. 683], attorney's fees were allowed when the class action was instrumental in recovering taxes which had escaped taxation. In *Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244, 90 A.L.R.3d 728], the plaintiff's action was instrumental in eliminating paid time off for certain holidays state employees were taking. In *Card* v. *Community Redevelopment Agency* (1976) 61 Cal.App.3d 570 [131 Cal.Rptr. 153], the taxpayers invalidated a city ordinance purporting to amend an existing redevelopment plan by including certain areas not covered by the original plan and as a result, certain property tax increment revenues came to the city rather than the redevelopment agency. In *Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, 23 Cal.3d 917, the court held the association's action in requiring the city to make specific findings that a proposed subdivision conformed to the city's general plan could be found an important and substantial benefit *to the city* and, thus, sufficiently significant to call for the conclusion attorney fees should be allowed (23 Cal.3d at pp. 940-941).

*Woodland Hills* held the right need not be of constitutional proportions to justify the award of attorney fees, but the Legislature in passing Code of Civil Procedure section 1021.5 obviously intended there be some selectivity, on a qualitative basis, in the award, for it gives the court discretion to exercise judgment in attempting to ascertain the "strength" or "social importance" of the right involved (see *Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, at p. 935).

As the court in *Woodland Hills* points out at pages 939 to 940, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a "benefit" where illegal private or public conduct is rectified. "Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving

benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case. [Citation.]"

In *Woodland Hills*, the court, discussing the "substantial benefit" theory, also points out (23 Cal.3d at p. 945): "When the 'benefits' bestowed on others become less tangible and more ephemeral in nature, however, the equity in charging involuntary beneficiaries with the costs of obtaining such benefits on an unjust enrichment theory becomes more problematical. Although the named plaintiffs and others in the benefited class may place a high value on such intangible benefits, and thus may be more than willing to pay their share of the costs of procuring such benefits, other members of the benefited class may value such benefits differently, and may legitimately complain that they should not be involuntarily saddled with costs which are out-of-proportion to their perceived benefit. In such circumstances, insofar as an award of attorney fees is sought to be justified on notions of unjust enrichment, the justification fails."

I believe the discretion authorized under the Brown Act provision (Gov. Code, § 54960.5) should be identical to the discretion authorized under the case law generally and Code of Civil Procedure section 1021.5 specifically, and that law, rather than the federal interpretations should be applied.

The benefits here are of a very questionable nature to anyone. Conceding there was a wrong in circulating the letter without a public meeting, I note it was an expedient means of avoiding the activation of the eminent domain proceeding which would have caused unnecessary expense and concern on the part of all parties. The objective was clearly to obtain a short postponement of service in order that the issue might be discussed more fully at a properly called public meeting and resolved before legal proceedings were begun in earnest. I see no real benefit to the public in bringing the action in this instance long after the matter was resolved, especially since (1) there was no effort to hide the action of these members, a practice the Brown Act seeks to obviate, and the matter was brought to the attention of the public promptly, (2) the purpose to avoid incurring unnecessary expenses of legal process was in the general public interest as well as the real party involved, and (3) the ultimate action of the council taken at an open and public meeting held within 30 days and without any prompting by this action supported the emergency action sought by the letter.

I can appreciate the distress some members of the public might have in not getting the planned park, but ultimate council action was responsible for that, not the delay in serving process which the letter occasioned. I am not unmindful of the fact this action might have some indirect benefit in deterring other similar acts of greater moment in the future, but there were no allegations of that here nor of any concerted effort to avoid the law generally. (Cf., *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Supervisors* (1968) 263 Cal.App.2d 41 [69 Cal.Rptr. 480].)

The benefit to the public in bringing this action almost four months after the matter was mooted by council action is nil. Proving the city attorney was wrong in opining this action by the council members was proper may provide some pleasant self-satisfaction to the plaintiffs, but I see no real benefit to the city or the plaintiffs by the action at that time under the standard of *Serrano, supra*, 20 Cal.3d 25, and *Woodland Hills, supra*, 23 Cal.3d 917. The earlier, proper action of the council on February 28 had the practical effect of mollifying the Brown Act violation. The council action following the delivery of the letter, especially the February 28 vote, was all done in public with full notice, evidencing recognition of the appropriate course of action to resolve the issue raised by the letter.

The award of attorney fees is discretionary with the trial court under Government Code section 54960.5 and I find no abuse of discretion in denying fees under the circumstances of this case applying the standard set out in *Serrano, supra*, and *Woodland Hills, supra*, as the court announced. I would reject the proposition urged by the plaintiffs that in every action of this sort where a violation is established the plaintiffs should ordinarily recover an attorney fee. I do not believe reversal is required, but if so, I believe the trial court may well observe the suggestions of the majority justifying no award and reach the same result as here using its test. The public benefit from the legal action here was not of a substantial proportion even on a local community level such as would require the award of attorney fees.

I find no abuse of discretion in the denial of such fees by the trial court and would affirm.

On June 16, 1981, the opinion was modified to read as printed above.