[No. F013637. Fifth Dist. Apr. 17, 1991.]

COUNTY OF FRESNO, Plaintiff and Appellant, v.
STEPHEN R. LEHMAN, as Assistant Executive Director, etc., et al.,
Defendants and Respondents.

## COUNSEL

Max E. Robinson, County Counsel, Phyllis M. Jay, Chief Deputy County Counsel, and Pamela A. Stone, Deputy County Counsel, for Plaintiff and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, N. Eugene Hill, Assistant Attorney General, Cathy A. Neff and Linda A. Cabatic, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**BUCKLEY, J.—**

### PROCEDURAL HISTORY

Appellant County of Fresno (County) appeals a trial court's ruling sustaining a demurrer without leave to amend and granting judgment dismissing the County's petition for writ of mandate and complaint for declaratory relief.

County was ordered to pay attorney's fees in the amount of $88,120 pursuant to Code of Civil Procedure section 1021.5[1] in Fresno Superior Court action No. 269458-7, *Sequoia Community Health Foundation, etc. v. Board of Supervisors of Fresno County, et al.*

County contends it is entitled to reimbursement of that amount from respondent State of California (State) by alleging that the expenditure arose out of a state-mandated new program or higher level of service pursuant to California Constitution article XIII B, section 6. It interprets Code of Civil Procedure section 1021.5, as enacted, as being such a state-mandated program or higher level of service.

County filed a test claim with respondent Commission on State Mandates (Commission) on November 25, 1987, for those costs (fees) paid by the County during the fiscal year 1986-1987. The test claim was administratively withdrawn, without a hearing, by the Commission. As a basis for the withdrawal, the Commission cited a prior test claim filed by a different entity, decided by the State Board of Control on April 16, 1980. The Board of Control, in the prior claim, determined that Code of Civil Procedure section 1021.5, enacted by Statutes of 1977, chapter 1197, did not mandate a new program or increase the level of service of an existing program within the definition of Revenue and Taxation Code former section 2207. (See discussion, *post.*)

County filed a petition for writ of mandate and a complaint for declaratory relief requesting in its first cause of action that the court issue a writ of mandate to compel the Commission to conduct a full hearing on the County's claim, deliver to the County a complete copy of documents submitted on the "first" claim, and issue a decision that chapter 1197 of Statutes of 1977 is a state-mandated program and that County is entitled to reimbursement of costs. As to the second cause of action, County requested a declaration that the Commission does not have jurisdiction to administratively refuse to hear any claims for reimbursement and to that extent, the Commission is unconstitutional and invalid.

State demurred to both the petition and complaint on the grounds that the court lacked subject matter jurisdiction because the statute of

---

[1] Code of Civil Procedure section 1021.5 states: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

limitations had run; the petition and complaint failed to state facts sufficient to constitute a cause of action; and the petition and complaint were uncertain. State also requested that the court take judicial notice of a decision of the Board of Control on July 25, 1979, on a claim regarding chapter 993 of the Statutes of 1973. That claim involved the creation of the Division of Occupational, Safety and Health Standards Board (OSHA).

The trial court granted State's request for judicial notice and sustained the demurrer without leave to amend based on two grounds. The statute of limitations had run because the cause of action accrued to County on April 16, 1980, by the Board of Control's determination, at that time, that the statute did not mandate a new program or increase the level of service, The court ruled no cause of action was stated by County in that Code of Civil Procedure section 1021.5 does not constitute a new program or higher level of service under California Constitution article XIII B, section 6.

The trial court also ruled that the statute enacting the private attorney general doctrine (Code Civ. Proc., § 1021.5) is not a program carrying out the governmental function of providing services to the poor. Rather, it is one of public policy, applying generally to violators of the law.[2]

County appeals from the judgment of dismissal following the sustaining of the demurrer, citing numerous errors by the trial court.

## DISCUSSION

*Denial of a test claim filed by one local entity does not constitute the accrual of a cause of action for purposes of the statute of limitations limiting judicial review for the test claim of a separate entity.*

Although there is some uncertainty as to whether the prior test claim filed with the Board of Control involved a claim under Statutes of 1973, chapter 993 or Statutes of 1977, chapter 1197, our analysis is not dependent upon a specific determination here of the basis for the prior test claim.[3]

---

[2] The record of the precedent case generating the test claim, Sequoia Community Health Foundation, etc. v. Board of Supervisors of Fresno County, et al., is not before us. However, it is apparent from the briefs and other materials herein that County was prohibited from carrying on certain practices involving, among other things, the disqualification of illegal aliens from treatment at Valley Medical Center, over which the board of supervisors had authority.

[3] County filed its petition for writ of mandate alleging error by the Commission in withdrawing from consideration the test claim of County on the basis of the denial of a prior test claim filed by a different local agency under Statutes of 1977, chapter 1197. Attached to the declaration of Pamela A. Stone in support of the petition for writ of mandate, etc. was a copy of a letter from Stephen R. Lehman to the County which indicated that the denial of the

Therefore, we are not compelled to address the issue involving judicial notice raised by County.

It will be helpful for a complete understanding of the issues in this case and for their proper resolution, to set forth the procedure relating to claims for reimbursement of costs mandated by the state under the authorizing statutes at the time the "first" claim was decided on April 16, 1980, and at the time the claim was filed by County here.[4]

At the time the test claim was filed in 1980, the implementing statutes were Revenue and Taxation Code section 2201 et seq. (Stats. 1973, ch. 358, § 3, p. 779.)[5] (*County of Contra Costa v. State of California* (1986) 177 Cal.App.3d 62, 69 [222 Cal.Rptr. 750].)

Section 2231, subdivision (a) provided that the state shall reimburse local agencies for all costs mandated by the state (defined in former § 2207).[6] Section 2250 et seq. provided a hearing procedure for the determination of claims by local governments. Former section 2218 stated that the first claim filed with respect to a statute is considered a "test claim." (See *County of Contra Costa v. State of California, supra,* 177 Cal.App.3d 62, for a comprehensive discussion of the statutory scheme for reimbursement under § 2201 et seq.)

Effective January 1, 1985, the Legislature established the Commission to consider and determine claims based on state mandates. (Gov. Code, §§ 17500, 17525.) The claim filed by County was filed pursuant to Government Code section 17500 et seq., which procedures are similar to those which were followed before the Board. (*County of Contra Costa v. State of California, supra,* 177 Cal.App.3d at p. 72.)

■ County correctly contends the statute of limitations could not begin to run until County had a right of action. ■ A cause of action

---

prior test claim under Statutes of 1977, chapter 1197, on April 16, 1980, compelled withdrawal since County's test claim was not the first test claim on the statute.

At the same time State filed its demurrer, it filed a request for judicial notice at the hearing on demurrer. State requested that judicial notice be taken of the decision of the Board of Control with regard to Statutes of 1973, chapter 993 dated July 25, 1979. That statute relates to the creation of OSHA. The law and motion judge took judicial notice of the exhibits proffered by State and made a finding that they were relevant. Notwithstanding this, the court, in its order on demurrer, used the date set forth in the exhibit to the petition filed by County as the accrual of the cause of action.

[4]The record before us does not indicate what agency filed the 1980 claim. However, the parties here do not question that it was a different entity than Fresno County.

[5]Much of Statutes of 1973, chapter 358, has been repealed. All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[6]In pertinent part, former section 2207 refers to "any increased costs which a local agency is required to incur as a result of . . . : [¶] (a) Any law . . . which mandates a new program or an increased level of service of an existing program; . . ."

accrues when the person who owns it is entitled to bring and prosecute an action on it. (*Collins* v. *County of Los Angeles* (1966) 241 Cal.App.2d 451, 454 [50 Cal.Rptr. 586].) It was not until County was ordered to pay and paid those fees that County could apply for reimbursement under Government Code section 17500 et seq.

 State argues that since no public entity challenged the Board of Control's determination on April 16, 1980, that no mandate was imposed by Statutes of 1977, chapter 1197, the statute of limitations expired three years later.[7] In support of its argument, State cites the cases of *Carmel Valley Fire Protection Dist.* v. *State of California* (1987) 190 Cal.App.3d 521 [234 Cal.Rptr. 795] and *Los Angeles Unified School Dist.* v. *State of California* (1988) 199 Cal.App.3d 686 [245 Cal.Rptr. 140]. *Carmel Valley Fire Protection Dist.* is distinguishable and State misreads *Los Angeles Unified School Dist.*

In *Carmel Valley Fire Protection Dist.* v. *State of California, supra,* 190 Cal.App.3d 521, the county filed a test claim for state-mandated costs related to fire-protective clothing. The Board of Control determined in 1979 that a state mandate existed. No judicial review of that decision was sought. Thereafter, legislation was introduced to appropriate money to pay the costs. The Legislature failed to enact the appropriations bill. A petition for writ of mandate was then filed by the county in 1984. The court granted a peremptory writ. On appeal, the state sought to dispute the Board of Control's findings in 1979. The appellate court held that the state was collaterally estopped from attacking that prior determination. (*Id.* at p. 534.) Notwithstanding the state's contention that it was not in privity with the state agencies which participated in 1979, the court concluded that " 'agents of the same government are in privity with each other, . . .' [Citation.]" (*Id.* at p. 535.)

The court found the requisite elements of administrative collateral estoppel, as set forth in *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321], present: (1) the administrative agency acted in a judicial capacity; (2) it resolved disputed issues properly before it; and (3) all parties were provided with the opportunity to fully and fairly litigate their claims. (*Carmel Valley Fire Protection Dist., supra,* 190 Cal.App.3d at p. 535.)

It is undisputed that no privity exists between the County here and the local entity filing the test claim in 1980; therefore, collateral estoppel could not apply. (*Summerford* v. *Board of Retirement* (1977) 72 Cal.App.3d 128,

---

[7] Code of Civil Procedure section 338 provides a three-year statute of limitations period for an action upon a liability created by statute.

132 [139 Cal.Rptr. 814]; *County of L. A.* v. *Continental Corp.* (1952) 113 Cal.App.2d 207, 222-223 [248 P.2d 157].) ■ A person neither a party nor in privity is not bound by a judgment. It is immaterial that he may have been vitally interested in and directly affected by the outcome of the action; due process requires that he have his own day in court. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 298, p. 737.)

Contrary to the assertions of State, *Los Angeles Unified School Dist.* v. *State of California, supra,* 199 Cal.App.3d 686, does not preclude judicial action here. Rather, it held that the Los Angeles School District had the right to judicial review of the denial by the Board of Control of district's claim. (*Id.* at p. 689.) Furthermore, the statute of limitations was not in issue in *Los Angeles Unified School Dist.* The court stated that although it was proper for the board to rely on its prior decision and to refuse to hold a new public hearing pursuant to former section 2253.2, the district had the right to judicial review of that denial. (*Ibid.*)

From the foregoing discussion, we conclude the court erred in ruling that the statute of limitations precluded the filing of the action by County.

*Code of Civil Procedure section 1021.5 does not constitute a state-mandated program.*

■ Inasmuch as the trial court also sustained the demurrer for failure to state a cause of action, we must decide whether Code of Civil Procedure section 1021.5 constitutes a state-mandated program. ■ The question of whether a cost is state-mandated is one of law. (*Carmel Valley Fire Protection Dist.* v. *State of California, supra,* 190 Cal.App.3d 521, 536.) ■ Code of Civil Procedure section 1021.5 authorizes an award of attorney fees under a "private attorney general" theory to a successful litigant " 'in any action which has resulted in the enforcement of *an important right affecting the public interest . . . .*' " (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 924-925 [154 Cal.Rptr. 503, 593 P.2d 200].) The purpose of awarding attorney's fees under the private attorney general theory is to encourage private litigation to enforce the common interests of significant societal importance when enforcement of such rights does not involve any individual's financial interests. (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 114 [212 Cal.Rptr. 485].)

Code of Civil Procedure section 1021.5 is thought to be our Legislature's response to *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612]. (*Common Cause* v. *Stirling* (1981) 119 Cal.App.3d 658, 662-663 [174 Cal.Rptr. 200].) In *Alyeska,* the United States Supreme Court held federal courts could not award attorney's fees in

private attorney general actions without specific statutory authorization. (*Common Cause, supra*, 119 Cal.App.3d at p. 662.) Almost contemporaneously with the enactment of Code of Civil Procedure section 1021.5, our Supreme Court rendered its decision in *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. *Serrano* held that California courts have inherent power to award attorney's fees in actions brought to vindicate policies based on the state Constitution. (*Common Cause, supra*, 119 Cal.App.3d at p. 663.) Later, our Supreme Court noted that "[w]hen other statutory criteria are satisfied, [Code of Civil Procedure section 1021.5] explicitly authorizes such award . . . regardless of its source—constitutional, statutory or other." (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, 23 Cal.3d at p. 925.) The award of attorney's fees is proper under Code of Civil Procedure section 1021.5 if (1) plaintiff's action has resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317-318 [193 Cal.Rptr. 900, 667 P.2d 704].)

■ The County contends that the private attorney general theory under that section is a "new program" or provides "an increased level of service of an existing program" pursuant to California Constitution article XIII B, section 6, and County is, therefore, entitled to reimbursement for costs incurred in compliance with that section.

On November 6, 1979, California voters by an initiative measure enacted Proposition 4 and added article XIII B to the California Constitution (hereafter article XIII B) which became effective on July 1, 1980. This article imposed spending limits on the state and local governments and provided in section 6:

" 'Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates: [¶] (a) Legislative mandates requested by the local agency affected; [¶] (b) Legislation defining a new crime or changing an existing definition of a crime; or [¶] (c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975.' " (*County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 50 [233 Cal.Rptr. 38, 729 P.2d 202].)

In construing the meaning of the language in article XIII B, section 6, that the state reimburse local agencies for the costs of any "new program or

higher level of service," the Supreme Court defined "higher level of service" as state-mandated increases in the services provided by local agencies in existing "programs." The term "program" is defined as "programs that carry out the governmental function of providing services to the public, or laws which, to implement a state policy, impose unique requirements on local governments and *do not apply generally to all residents and entities in the state.*" (*County of Los Angeles* v. *State of California, supra,* 43 Cal.3d 46, 56, italics added.) The intent underlying article XIII B, section 6 was to require reimbursement to local agencies for the costs involved in carrying out functions peculiar to government, not for expenses incurred by local agencies as an incidental impact of laws that apply generally to all state residents and entities. Laws of general application are not passed by the Legislature to "force" programs on localities. (43 Cal.3d at pp. 56-57.)

As our Supreme Court also noted, "the drafters and the electorate had in mind subvention for the expense or increased cost of *programs administered locally* . . . ." (Italics added, 43 Cal.3d at pp. 49-50.) It would be tortuous to interpret Code of Civil Procedure section 1021.5 as a program *administered locally.* A more logical interpretation is to view the expenses incurred therewith as an "incidental impact" of a general law.

The application of Code of Civil Procedure section 1021.5 is not limited to local agencies and has been applied generally to all residents and entities in the state. The following are cases where private individuals or entities were ordered to pay attorney's fees pursuant to Code of Civil Procedure section 1021.5: *Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311—private owner of store; *Braude* v. *Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994 [223 Cal.Rptr. 914]—private nonprofit corporation; *Franzblau* v. *Monardo* (1980) 108 Cal.App.3d 522 [166 Cal.Rptr. 610]—officers of nonprofit hospital.

In *Braude* v. *Automobile Club of Southern Cal., supra,* 178 Cal.App.3d 994, at page 1011, it was noted that "[p]ractically all of the [Code of Civil Procedure] section 1021.5 cases involve a public entity as a defendant; however, such fees may be awarded if, as in the instant case, a private party is the only defendant." County argues that since "almost all" of the Code of Civil Procedure section 1021.5 cases involve public entities, Code of Civil Procedure section 1021.5 is a new program directed at local government. We do not feel that whether a statistically greater number of actions filed against public entities than against private parties is relevant. What is significant is that Code of Civil Procedure section 1021.5 was intended to be used as a tool against *any* individual or entity, public or private.

County next contends that because Code of Civil Procedure section 1021.5 expressly prohibits the recovery of an award of attorney's fees to

public agencies, that limitation establishes Code of Civil Procedure section 1021.5 as a new program. County's attempt at syllogism fails. By definition, public agencies are already supposed to be working for the "public good." It would be contrary to the purpose of the *private* attorney general theory to allow a *public* agency to recover such fees. It does not necessarily follow that a *bar* to filing suit under Code of Civil Procedure section 1021.5 demonstrates that Code of Civil Procedure section 1021.5 is a state-mandated new program. If a new program was created at all, and we hold it was not, it results from the public agencies being ordered to *pay* under the private attorney general theory, not from the preclusion of *bringing* such an action.

As discussed previously, private individuals and entities, as well as public agencies, have been ordered to pay fees pursuant to Code of Civil Procedure section 1021.5. That fact is significant in determining whether the fees ordered paid by County were really for "functions peculiar to government." We conclude that Code of Civil Procedure section 1021.5 is not a state-mandated program as interpreted by article XIII B, section 6. Furthermore, Code of Civil Procedure section 1021.5 was enacted to encourage private actions to enforce important public policies. (*Press* v. *Lucky Stores, Inc.*, *supra*, 34 Cal.3d at pp. 318-319.) In context here, fees were awarded against County in the underlying action which enjoined certain improper practices at Valley Medical Center; in other words, as stated in *Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, 23 Cal.3d 917 at page 933, to effectuate "fundamental public policies embodied in constitutional or statutory provisions, . . ." It would be inimical to the purpose of Code of Civil Procedure section 1021.5 and the intent of article XIII B, section 6 to find a state mandate under those circumstances.

### DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

Best, P. J., and Stone (W. A.), J., concurred.