[No. B006078. Second Dist., Div. Five. Feb. 19, 1987.]

CARMEL VALLEY FIRE PROTECTION DISTRICT et al., Plaintiffs and Respondents, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

[No. B011941. Second Dist., Div. Five. Feb. 19, 1987.]

RINCON DEL DIABLO MUNICIPAL WATER DISTRICT et al., Plaintiffs and Respondents, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

[No. B011942. Second Dist., Div. Five. Feb. 19, 1987.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

522

524

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Marilyn K. Mayer and Carol Hunter, Deputy Attorneys General, for Defendants and Appellants.

De Witt Clinton, County Counsel, Amanda F. Susskind, Deputy County Counsel, Ross & Scott, William D. Ross and Diana P. Scott, for Plaintiffs and Respondents.

OPINION

EAGLESON, J.—These consolidated appeals arise from three separate trial court proceedings concerning the heretofore unsuccessful efforts of various local agencies to secure reimbursement of state-mandated costs.

Case No. 2d Civ. B006078 (Carmel Valley et al. case) was the first matter decided by the trial court. The memorandum of decision in that case was judicially noticed by the trial court which heard the consolidated matters in 2d Civ. B011941 (Rincon et al. case) and 2d Civ. B011942 (County of Los Angeles case). Issues common to all three cases will be discussed together

under the County of Los Angeles appeal, while issues unique to the other two appeals will be considered separately.

We identify the parties to the various proceedings in footnote 1.[1] For literary convenience, however, we will refer to all appellants as the State and all respondents as the County unless otherwise indicated.

APPEAL IN CASE NO. 2 CIVIL B011942

(County of Los Angeles Case)

FACTS AND PROCEDURAL HISTORY

County employs fire fighters for whom it purchased protective clothing and equipment, as required by title 8, California Administrative Code, sections 3401-3409, enacted in 1978 (executive orders). County argues that it is entitled to State reimbursement for these expenditures because they constitute a state-mandated "new program" or "higher level of service." County relies on Revenue and Taxation Code section 2207[2] and former

---

[1] *2d Civ. B006078*: The petitioners below and respondents on appeal are Carmel Valley Fire Protection District, City of Anaheim, Aptos Fire Protection District, Citrus Heights Fire Protection District, Fair Haven Fire Protection District, City of Glendale, City of San Luis Obispo, County of Santa Barbara and Ventura County Fire Protection District.

The respondents below and appellants here are State of California, Kenneth Cory and Jesse Marvin Unruh.

*2d Civ. B011941*: The petitioners below and respondents on appeal are Rincon Del Diablo Municipal Water District, Twenty-Nine Palms Water District, Alpine Fire Protection District, Bonita-Sunnyside Fire Protection District, Encinitas Fire Protection District, Fallbrook Fire Protection District, City of San Luis Obispo, Montgomery Fire Protection District, San Marcos Fire Protection District, Spring Valley Fire Protection District, Vista Fire Protection District and City of Coronado.

Respondents below and appellants here are State of California, State Department of Finance, State Department of Industrial Relations, State Board of Control, Kenneth Cory, State Controller, Jesse Marvin Unruh, State Treasurer, and Mark H. Bloodgood, Auditor-Controller, County of Los Angeles.

*2d Civ. B011942*: The County of Los Angeles is the petitioner below and respondent on appeal. Respondents below and appellants here are State of California, State Department of Finance, State Department of Industrial Relations, Kenneth Cory, and Jesse Marvin Unruh.

All respondents on appeal are conceded to be "local agencies," as defined in Revenue and Taxation Code section 2211.

[2] The pertinent parts of Revenue and Taxation Code section 2207 provide: " 'Costs mandated by the state' means any increased costs which a local agency is required to incur as a result of the following: [¶] (a) Any law enacted after January 1, 1973, which mandates a new program or an increased level of service of an existing program; [¶] (b) Any executive order issued after January 1, 1973, which mandates a new program; [¶] (c) Any executive order issued after January 1, 1973, which (i) implements or interprets a state statute and (ii), by

section 2231,[3] and California Constitution, article XIII B, section 6[4] to support its claim.

County filed a test claim with the State Board of Control (Board) for these costs incurred during fiscal years 1978-1979 and 1979-1980.[5] After hearings were held on the matter, the Board determined on November 20, 1979, that there was a state mandate and that County should be reimbursed. State did not seek judicial review of this quasi-judicial decision of the Board.

Thereafter, a local government claims bill, Senate Bill Number 1261 (Stats. 1981, ch. 1090, p. 4191) (S.B. 1261) was introduced to provide appropriations to pay some of County's claims for these state-mandated costs. This bill was amended by the Legislature to delete all appropriations for the payment of these claims. Other claims of County not provided for in S.B. 1261 were contained in another local government claims bill, Assembly Bill Number 171 (Stats. 1982, ch. 28, p. 51) (A.B. 171). The appropriations in this bill were deleted by the Governor. Both pieces of legislation, sans appropriations, were enacted into law.[6]

On September 21, 1984, following these legislative rebuffs, County sought reimbursement by filing a petition for writ of mandate (Code Civ. Proc., § 1085) and complaint for declaratory relief. After appropriate responses were filed and a hearing was held, the court executed a judgment on February 6, 1985, granting a peremptory writ of mandate. A writ of mandate was issued and other findings and orders made. It is from this judgment of

such implementation or interpretation, increases program levels above the levels required prior to January 1, 1973. . . ."

[3]The pertinent parts of former Revenue and Taxation Code section 2231, subdivision (a) provide: "The state shall reimburse each local agency for all 'costs mandated by the state', as defined in Section 2207." This section was repealed (Stats. 1986, ch. 879, § 23), and replaced by Government Code section 17561. We will refer to the earlier code section.

[4]The pertinent parts of section 6, article XIII B of the California Constitution, enacted by initiative measure, provide: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the state shall provide a subvention of funds to reimburse such local government for the costs of such program or increased level of service, except that the Legislature may, but need not, provide such subvention of funds for the following mandates: [¶] . . . . [¶] (c) Legislative mandates enacted prior to January 1, 1975, or executive orders or regulations initially implementing legislation enacted prior to January 1, 1975." This constitutional amendment became effective July 1, 1980.

[5]County filed its test claim pursuant to former Revenue and Taxation Code section 2218, which was repealed by Statutes 1986, chapter 879, section 19.

Additionally, the Board is no longer in existence. The Commission on State Mandates has succeeded to these functions. (Gov. Code, §§ 17525, 17630.)

[6]The final legislation did include appropriations for other local agencies on other types of approved claims.

February 6, 1985, that State appeals. The relevant portions of the judgment are set forth verbatim below.[7]

[7]"1. The Court adjudges and declares that funds appropriated by the Legislature for the State Department of Industrial Relations for the Prevention of Industrial Injuries and Deaths of California Workers within the Department's General Fund may properly be and should be spent for the reimbursement of state-mandated costs incurred by Petitioner as established in this action.

"2. A peremptory writ of mandamus shall issue under the seal of this Court, commanding Respondent State of California, through its Department of Finance, to give notification in writing as specified in Section 26.00 of the Budget Act of 1984 (Chapter 258, Statutes of 1984) of the necessity to encumber funds in conformity [with] this order and, unless the Legislature approves a bill that would enact a general law, within 30 days of said notification that would obviate the necessity of such payment, Respondent Kenn[e]th Cory, the State Controller of the State of California, or his successors in office, if any, shall draw warrants on funds appropriated for the State Department of Industrial Relations for the 1984-85 Budget Year in account numbers 8350-001-001, 8350-001-452, 8350-001-453, and 8350-001-890 as implemented in Chapter 258 Statutes of 1984, sufficient to satisfy the claims of Petitioner, plus interest, as set forth in the motion and accompanying writ of mandamus. Said writ shall also issue against Jessie [sic] Marvin Unruh, the State Treasurer of the State of California, and his successors in office, if any, commanding him to make payment on the warrants drawn by Respondent Kenneth Cory.

"3. Pending the final disposition of this proceeding, or the payment of the applicable reimbursement claims and interest as set forth herein, Respondents, and each of of [sic] them, their successors in office, agents, servants and employees and all persons acting in concert [or] participation with them, are hereby enjoined and restrained from directly or indirectly expending from the 1984-85 General Fund Budget of the State Department of Industrial Relations as is more particularly described in paragraph number 2 hereinabove, any sums greater than that which would leave in said budget at the conclusion of the 1984-85 fiscal year an amount less than the reimbursement amounts on the aggregate amount of $307,685 in this case, together with interest at the legal rate through payment of said reimbursement amounts. Said amounts are hereinafter referred to collectively as the 'reimbursement award sum'.

"4. Pending the final disposition of this proceeding or the payment of the reimbursement award sum at issue herein, Respondents, and each of them, their successors in office, agents, servants and employees, and all persons acting in concert or participation with them, are hereby enjoined and restrained from directly or indirectly reverting the reimbursement award sum from the General Fund line-item accounts of the Department of Industrial Relations to the General Funds of the State of California and from otherwise dissipating the reimbursement award sum in a manner that would make it unavailable to satisfy this Court's judgment.

"5. In addition to the foregoing relief, Petitioner is entitled to offset amounts sufficient to satisfy the claims of Petitioner, plus interest, against funds held by Petitioner as fines and forfeitures which are collected by the local Courts, transferred to the Petitioner and remitted to Respondents on a monthly basis. Those fines and forfeitures are levied, and their distribution provided, as set forth in Penal Code Sections 1463.02, 1463.03, 14[6]3.5[a], and 1464; Government Code Sections 13967, 26822.3 and 72056, Fish and Game Code Section 13100; Health and Safety Code Section 11502 and Vehicle Code Sections 1660.7, 42004, and 41103.5.

"6. The Court adjudges and declares that the State has a continuing obligation to reimburse Petitioner for costs incurred in fiscal years subsequent to its claim for expenditures in the 1978-79 and 1979-80 fiscal years as set forth in the petition and the accompanying motion for the issuance of a writ of mandate.

"7. The Court adjudges and declares that deletion of funding and prohibition against accepting claims for expenditures incurred as a result of the state-mandated program of Title 8, California Administrative Code Sections 3401 through 3409 as contained in Section 3 of Chapter 109[0], Statutes of 1981 were invalid and unconstitutional.

## CONTENTIONS

State advances two basic contentions. It first asserts that the costs incurred by County are not state mandated because they are not the result of a "new program," and do not provide a "higher level of service." Either or both of these requirements are the sine qua non of reimbursement. Second, assuming a "new program" or "higher level of service" exists, portions of the trial court order aimed at assisting the reimbursement process were made in excess of the court's jurisdiction.

These contentions are without merit. We modify and affirm all three judgments.

## DISCUSSION

## I

## ISSUE OF STATE MANDATE

The threshold question is whether County's expenditures are state mandated. The right to reimbursement is triggered when the local agency incurs "costs mandated by the state" in either complying with a "new program" or providing "an increased level of service of an existing program."[8] State advances many theories as to why the Board erred in concluding that these expenditures are state-mandated costs. One of these arguments is whether the executive orders are a "new program" as that phrase has been recently defined by our Supreme Court in *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46 [233 Cal.Rptr. 38, 729 P.2d 202].

---

"8. The Court adjudges and declares that the expenditures incurred by Petitioner as a result of the state-mandated program of Title 8, California Administrative Code Sections 3401 through 3409 were not the result of any federally mandated program.

"9. A peremptory writ of mandamus shall issue under the seal of this Court commanding Respondent State Board of Control, or its successor-in-interest, to hear and approve the claims of Petitioner for costs incurred in complying with the state-mandated program of Title 8, California Administrative Code Sections 3401 through 3409 subsequent to fiscal year 1979-80.

" . . . . . . . . . . . . . . . . . .

"11. The Court adju[d]ges and declares that the State Respondents are prohibited from offsetting, or attempting to implement an offset against moneys due and owing Petitioner until Petitioner is completely reimbursed for all of its costs in complying with the state mandate of Title 8, California Administrative Code Sections 3401 through 3409."

[8]This language is taken from Revenue and Taxation Code section 2207 and former section 2231. Article XIII B, section 6 refers to "higher" level of service rather than "increased" level of service. We perceive the intent of the two provisions to be identical. The parties also use these words interchangeably.

As we shall explain, State has waived its right to challenge the Board's findings and is also collaterally estopped from doing so. Additionally, although State is not similarly precluded from raising issues presented by the *State of California* case, we conclude that the executive orders are a "new program" within the meaning of article XIII B, section 6.

A. *Waiver*

■ We initially conclude that State has waived its right to contest the Board's findings. ■ Waiver occurs where there is an existing right; actual or constructive knowledge of its existence; and either an actual intention to relinquish it, or conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that it has been waived. (*Medico-Dental etc. Co.* v. *Horton & Converse* (1942) 21 Cal.2d 411, 432 [132 P.2d 457]; *Loughan* v. *Harger-Haldeman* (1960) 184 Cal.App.2d 495, 502-503 [7 Cal.Rptr. 581].) A right that is waived is lost forever. (*L.A. City Sch. Dist.* v. *Landier Inv. Co.* (1960) 177 Cal.App.2d 744, 752 [2 Cal.Rptr. 662].) The doctrine of waiver applies to rights and privileges afforded by statute. (*People* v. *Murphy* (1962) 207 Cal.App.2d 885, 888 [24 Cal.Rptr. 803].)

■ State now contends to be an aggrieved party and seeks to dispute the Board's findings. However, it failed to seek judicial review of that November 20, 1979 decision (Code Civ. Proc., § 1094.5) as authorized by former Revenue and Taxation Code section 2253.5. The three-year statute of limitations applicable to such review has long since passed. (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 141, fn. 10 [172 Cal.Rptr. 206, 624 P.2d 256]; Code Civ. Proc., § 338, subd. 1.)

In addition, State, through its agents, acquiesced in the Board's findings by seeking an appropriation to satisfy the validated claims. (Former Rev. & Tax. Code, § 2255, subd. (a).) On September 30, 1981, S.B. 1261 became law. On February 12, 1982, A.B. 171 was enacted. Appropriations had been stripped from each bill. State did not then seek review of the Board determinations even though time remained before the three-year statutory period expired. This inaction is clearly inconsistent with any intent to contest the validity of the Board's decision and results in a waiver.

B. *Administrative Collateral Estoppel*

■ We next conclude that State is collaterally estopped from attacking the Board's findings. ■ Traditionally, collateral estoppel has been applied to bar relitigation of an issue decided in a prior court proceeding. In order for the doctrine to apply, the issues in the two proceedings must

be the same, the prior proceeding must have resulted in a final judgment on the merits, and the same parties or their privies must be involved. (*People v. Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].)

The doctrine was extended in *Sims* to apply to a final adjudication of an administrative agency of statutory creation so as to preclude relitigation of the same issues in a subsequent criminal case. Our Supreme Court held that collateral estoppel applies to such prior adjudications where three requirements are met: (1) the administrative agency acted in a judicial capacity; (2) it resolved disputed issues properly before it; and (3) all parties were provided with the opportunity to fully and fairly litigate their claims. (*Id.* at p. 479.) All of the elements of administrative collateral estoppel are present here.

The Board was created by the state Legislature to exercise quasi-judicial powers in adjudging the validity of claims against the State. (*County of Sacramento* v. *Loeb* (1984) 160 Cal.App.3d 446, 452 [206 Cal.Rptr. 626].) At the time of the hearings, the Board proceedings were the sole administrative remedy available to local agencies seeking reimbursement for state-mandated costs. (Former Rev. & Tax. Code, § 2250.) Board examiners had the power to administer oaths, examine witnesses, issue subpoenas, and receive evidence. (Gov. Code, § 13911.) The hearings were adversarial in nature and allowed for the presentation of evidence by the claimant, the Department of Finance, and any other affected agency. (Former Rev. & Tax. Code, § 2252.)

The record indicates that the state mandate issues in this case were fully litigated before the Board. A representative of the state Division of Occupational Safety and Health and the Department of Industrial Relations testified as to why County's costs were not state mandated. Representatives of the various claimant fire districts in turn offered testimony contradicting that view. The proceedings culminated in a verbatim transcript and a written statement of the basis for the Board's decision.

State complains, however, that some of the traditional elements of the collateral estoppel doctrine are missing. In particular, State argues that it was not a party to the Board hearings and was not in privity with those state agencies which did participate.

"[T]he courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government. [Fn. omitted.]" (*Lerner* v. *Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 398 [29 Cal.Rptr. 657, 380 P.2d 97].) As we stated in our introduction of the parties in this case, the party

known as "State " is merely a shorthand reference to the various state agencies and officials named as defendants below. Each of these defendants is an agent of the State of California and had a mutual interest in the Board proceedings. They are thus in privity with those state agencies which did participate below (e.g., Occupational Safety and Health Division).

It is also clear that even though the question of whether a cost is state mandated is one of law (*City of Merced* v. *State of California* (1984) 153 Cal.App.3d 777, 781 [200 Cal.Rptr. 642]), subsequent litigation on that issue is foreclosed here. ■ A prior judgment on a question of law decided by a court is conclusive in a subsequent action between the same parties where both causes involved arose out of the same subject matter or transaction, and where holding the judgment to be conclusive will not result in an injustice. (*City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 230 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Beverly Hills Nat. Bank* v. *Glynn* (1971) 16 Cal.App.3d 274, 286-287 [93 Cal.Rptr. 907]; Rest.2d Judgments, § 28, p. 273.)[9]

■ Here, the basic issues of state mandate and the amount of reimbursement arose out of County's required compliance with the executive orders. In either forum—Board or court—the claims and the evidentiary and legal determination of their validity would be considered in similar fashion.

Furthermore, a determination of conclusiveness would not work an injustice. As we have noted, the Board was statutorily created to consider the validity of the various claims now being litigated. Processing of reimbursement claims in this manner was the only administrative remedy available to County. If we were to grant State's request and review the Board's determination de novo, we would, in any event, adhere to the well-settled principle of affording "great weight" to "the contemporaneous administrative construction of the enactment by those charged with its enforcement . . . ." (*Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].)

There is no policy reason to limit the application of the collateral estoppel doctrine to successive court proceedings. In *City and County of San Francisco* v. *Ang* (1979) 97 Cal.App.3d 673, 679 [159 Cal.Rptr. 56], the doctrine was applied to bar relitigation in a subsequent civil proceeding of a zoning issue previously decided by a city board of permit appeals. We similarly hold that the questions of law decided by the Board are binding in all of the subsequent civil proceedings presented here. State therefore is collaterally

---

[9]As it happened, the entire Board determination involved a question of law since the dollar amount of the claimed reimbursement was not disputed.

estopped to raise the issues of state mandate and amount of reimbursement in this appeal.

C. *Executive Orders—A "New Program" Under Article XIII B, Section 6*

■ The recent decision by our Supreme Court in *County of Los Angeles* v. *State of California, supra,* 43 Cal.3d at p. 49 presents a new issue not previously considered by the Board or the trial court. That question is whether the executive orders constitute the type of "program" that is subject to the constitutional imperative of subvention under article XIII B, section 6.[10] We conclude that they are.

In *State of California,* the Court concluded that the term "program" has two alternative meanings: "programs that carry out the governmental function of providing services to the public, *or* laws which, to implement a state policy, impose unique requirements on local governments and do not apply generally to all residents and entities in the state." (*Id.* at p. 56, italics added.) Although only one of these findings is necessary to trigger reimbursement, both are present here.

■ First, fire protection is a peculiarly governmental function. (*County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 481 [105 Cal.Rptr. 374, 503 P.2d 1382].) "Police and fire protection are two of the most essential and basic functions of local government." (*Verreos* v. *City and County of San Francisco* (1976) 63 Cal.App.3d 86, 107 [133 Cal.Rptr. 649].) This classification is not weakened by State's assertion that there are private sector fire fighters who are also subject to the executive orders. Our record on this point is incomplete because the issue was not presented below. Nonetheless, we have no difficulty in concluding as a matter of judicial notice that the overwhelming number of fire fighters discharge a classical governmental function.[11]

---

[10]State is not precluded from raising this new issue on appeal. Questions of law decided by an administrative agency invoke the collateral estoppel doctrine only when a determination of conclusiveness will not work an injustice. Likewise, the doctrine of waiver is inapplicable if a litigant has no actual or constructive knowledge of his rights. Since the *State of California* rule had not been announced at the time of the Board or trial court proceedings herein, the doctrines of waiver and collateral estoppel are inapplicable to State on this particular issue. Both parties have been afforded additional time to brief the matter.

[11]County suggests that to the extent private fire brigades exist, they are customarily part-time individuals who perform the function on a part-time basis. As such, they are excluded by the balance of the definitional term in title 8, California Administrative Code section 3402, which provides, in pertinent part: "... The term [fire fighter] does not apply to emergency pick-up labor or other persons who may perform first-aid fire extinguishment as collateral to their regular duties."

The second, and alternative, prong of the *State of California* definition is also satisfied. The executive orders manifest a state policy to provide updated equipment to all fire fighters. Indeed, compliance with the executive orders is compulsory. The requirements imposed on local governments are also unique because fire fighting is overwhelmingly engaged in by local agencies. Finally, the orders do not apply generally to all residents and entities in the State but only to those involved in fire fighting.

These facts are distinguishable from those presented in *State of California*. There, the court held that a state-mandated increase in workers' compensation benefits did not require state subvention because the costs incurred by local agencies were only an incidental impact of laws that applied generally to all state residents and entities (i.e., to all workers and all governmental and nongovernmental employers). Governmental employers in that setting were indistinguishable from private employers who were obligated through insurance or direct payment to pay the statutory increases.

*State of California* only defined the scope of the word "program" as used in California Constitution, article XIII B, section 6. We apply the same interpretation to former Revenue and Taxation Code section 2231 even though the statute was enacted much earlier. The pertinent language in the statute is identical to that found in the constitutional provision and no reason has been advanced to suggest that it should be construed differently. In any event, a different interpretation must fall before a constitutional provision of similar import. (*County of Los Angeles v. Payne* (1937) 8 Cal.2d 563, 574 [66 P.2d 658].)

II

ISSUE OF WHETHER COURT ORDERS EXCEEDED ITS JURISDICTION

A. *The Court Has Not Ordered an Appropriation in Violation of the Separation of Powers Doctrine*

█ State begins its general attack on the judgment by citing the long-standing principle that a court order which directly compels the Legislature to appropriate funds or to pay funds not yet appropriated violates the separation of powers doctrine. (Cal. Const., art. III, § 3; art. XVI, § 7; *Mandel v. Myers* (1981) 29 Cal.3d 531, 540 [174 Cal.Rptr. 841, 629 P.2d 935].)[12] State

---

[12]Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

Article XVI, section 7 of the California Constitution provides: "Money may be drawn from the Treasury only through an appropriation made by law and upon a Controller's duly drawn warrant."

observes (and correctly so) that the relevant constitutional (art. XIII B, § 6) and statutory (Rev. & Tax. Code, § 2207 & former § 2231) provisions are not appropriations measures. (See *City of Sacramento* v. *California State Legislature* (1986) 187 Cal.App.3d 393, 398 [231 Cal.Rptr. 686].) Since State otherwise discerns no manifest legislative intent to appropriate funds to pay County's claims (*City & County of S. F.* v. *Kuchel* (1948) 32 Cal.2d 364, 366 [196 P.2d 545]), it concludes that the judgment unconstitutionally compels performance of a legislative act.

State further argues that the judiciary's ability to reach an existing agency-support appropriation (State Department of Industrial Relations) (fn. 7, ¶ 1, *ante*) has been approved in only two contexts. First, the court can order payment from an existing appropriation, the expenditure of which has been legislatively prohibited by an unconstitutional or unlawful restriction. (*Committee to Defend Reproductive Rights* v. *Cory* (1982) 132 Cal.App.3d 852, 856 [183 Cal.Rptr. 475].) Second, once an adjudication has finally determined the rights of the parties, the court may compel satisfaction of the judgment from a current unexpended, unencumbered appropriation which administrative agencies routinely have used for the purpose in question. (*Mandel* v. *Myers, supra,* 29 Cal.3d at p. 544.) State insists that these facts are not present here.

County rejoins that a writ of traditional mandate (Code Civ. Proc., § 1085) is the correct method of compelling State to perform a clear and present ministerial legal obligation. (*County of Sacramento* v. *Loeb, supra,* 160 Cal.App.3d at pp. 451-452.) The ministerial obligation here is contained in California Constitution, article XIII B, section 6 and in Revenue and Taxation Code section 2207 and former section 2231. These provisions require State to reimburse local agencies for state-mandated costs.

We reject State's general characterization of the judgment by noting that it only affects an existing appropriation. It declares (fn. 7, ¶ 1, *ante*) that only funds already *"appropriated* by the Legislature for the State Department of Industrial Relations for the Prevention of Industrial Injuries and Deaths of California Workers within the Department's General Fund" shall be spent for reimbursement of County's state-mandated costs. (Italics added.) There is absolutely no language purporting to require the Legislature to enact appropriations or perform any other act that might violate separation of powers principles. ■ By simply ordering the State Controller to draw warrants and directing the State Treasurer to pay on already appropriated funds (fn. 7, ¶ 2, *ante*), the judgment permissibly compels performance of a ministerial duty: "[O]nce funds have already been appropriated by legislative action, a court transgresses no constitutional principle when it orders the State Controller or other similar official to make appropriate expendi-

tures from such funds. [Citations.]" (*Mandel* v. *Myers, supra,* 29 Cal.3d at p. 540.)

As we will discuss in further detail below, the subject funds (fn. 7, ¶ 1, *ante*) were saddled with an unconstitutional restriction (fn. 7, ¶ 7, *ante*). However, *Mandel* establishes that such a restriction does not necessarily infect the entire appropriation. There, the Legislature had improperly prohibited the use of budget funds to pay a court-ordered and administratively approved attorney's fees award. The court reasoned that as long as appropriated funds were "reasonably available for the expenditures in question, the separation of powers doctrine poses no barrier to a judicial order directing the payment of such funds." (*Id.* at p. 542.) The court went on to find that money in a general "operating expenses and equipment" fund was, by both the Budget Act's terms and prior administrative practice, reasonably available to pay the attorney's fees award.

Contrary to State's argument, *Mandel* does not require that past administrative practice support a judgment for reimbursement from an otherwise available appropriation. Although there was evidence of a prior administrative practice of paying counsel fees from funds in the "operating expenses and equipment" budget, this fact was not the main predicate of the court's holding. Rather, the decisive factor was that the budget item in question functioned as a "catchall" appropriation in which funds were still reasonably available to satisfy the State's adjudicated debt. (*Id.* at pp. 543-544.)

Another illustration of this principle is found in *Serrano* v. *Priest* (1982) 131 Cal.App.3d 188 [182 Cal.Rptr. 387]. Plaintiffs in that case secured a judgment against the State of California for $800,000 in attorney's fees. The judgment was not paid, and subsequent proceedings were brought against State to satisfy the judgment. The trial court directed the State Controller to pay the $800,000 award, plus interest, from funds appropriated by the Legislature for "operating expenses and equipment" of the Department of Education, Superintendent of Public Instruction and State Board of Education. (*Id.* at p. 192.) This court affirmed that order even though there was no evidence that the agencies involved had ever paid court-ordered attorney's fees from that portion of the budget. Relying on *Mandel,* we concluded that funds were reasonably available from appropriations enacted in the Budget Act in effect at the time of the court's order, as well as from similar appropriations in subsequent budget acts.

 State also incorrectly asserts that the appropriations affected by the court's order must specifically refer to the particular expenditure in question in order to be available. This notion was summarily dismissed in *Mandel* v. *Myers, supra,* 29 Cal.3d at pp. 543-544. Likewise, in *Committee to Defend*

*Reproductive Rights* v. *Cory, supra,* 132 Cal.App.3d at pp. 857-858, the court decreed that payments for Medi-Cal abortions could properly be ordered from monies appropriated for other Medi-Cal services, even though this use had been specifically prohibited by the Legislature.

Applying these various principles here, we note that the judgment (fn. 7, ¶ 2, *ante*) identified funds in account numbers 8350-001-001, 8350-001-452, 8350-001-453 and 8350-001-890 as being available for reimbursement. Within these 1984-1985 account appropriations for the Department of Industrial Relations were monies for Program 40, the Prevention of Industrial Injuries and Deaths of California Workers. The evidence clearly showed that the remaining balances on hand would cover the cost of reimbursement. Since it is conceded that the fire fighting protective clothing and equipment in this case was purchased to prevent deaths and injuries to fire fighters, these funds, although not specifically appropriated for the reimbursement in question, were generally related to the nature of costs incurred by County and are therefore reasonably available for reimbursement.

B. *Legislative Disclaimers, Findings and Budget Control Language Are No Defense to Reimbursement*

As a general defense against the order to reimburse, State insists that the Legislature has itself concluded that the claimed costs are not reimbursable. This determination took the combined form of disclaimers, findings and budget control language. State interprets this self-serving legislation, as well as the legislative and gubernatorial deletions, as forever sweeping away State's obligation to reimburse the state-mandated costs at issue. Consequently, any order that ignores these restrictions on payment would amount to a court-ordered appropriation. As we shall conclude, these efforts are merely transparent attempts to do indirectly that which cannot lawfully be done directly.

The seminal legislation that gave rise to the 1978 executive orders was enacted by Statutes 1973, chapter 993, and is labeled the California Occupational Safety and Health Act (Cal/OSHA). It is modeled after federal law and is designed to assure safe working conditions for all California workers. A legislative disclaimer appearing in section 106 of that bill reads: "No appropriation is made by this act . . . for the reimbursement of any local agency for any costs that may be incurred by it in carrying on any program or performing any service required to be carried on . . . ." The stated reason for this decision not to appropriate was that the cost of implementing the act was "minimal on a statewide basis in relation to the effect on local tax rates." (Stats. 1973, ch. 993, § 106, p. 1954.)

Again, in 1974, the Legislature stated: "Notwithstanding Section 2231 of the Revenue and Taxation Code, there shall be no reimbursement pursuant to this section, nor shall there be an appropriation made by this act, because the Legislature finds that this act and any executive regulations or safety orders issued pursuant thereto merely implement federal law and regulations." (Stats. 1974, ch. 1284, § 106, p. 2787.) This statute amended section 106 of Statutes 1973, chapter 993, and was a post facto change in the stated legislative rationale for not providing reimbursement.

Presumably because of the large number of reimbursement claims being filed, the Legislature subsequently used budget control language to confirm that compliance with the executive orders should not trigger reimbursement. Some of this legislation was effective September 30, 1981, as part of a local agency and school district reimbursement bill. The control language provided that "[t]he Board of Control shall not accept, or submit to the Legislature, any more claims pursuant to ... Sections 3401 to 3409, inclusive, of Title 8 of the California Administrative Code." (Stats. 1981, ch. 1090, § 3, p. 4193.)[13]

Further control language was inserted in the 1981, 1983 and 1984 Budget Acts. (Stats. 1981, ch. 99, § 28.40, p. 606; Stats. 1983, ch. 324, § 26.00, p. 1504; Stats. 1984, ch. 258, § 26.00.) This language prohibits encumbering appropriations to reimburse costs incurred under the executive orders, except under certain limited circumstances.

 State first challenges the trial court's finding that expenditures mandated by the executive orders were not the result of a federally mandated program (fn. 7, ¶ 8, *ante*), despite the legislative finding in Statutes 1974, chapter 1284, section 106. We agree with the court's decision that there was no federal mandate.

The significance of this no-federal-mandate finding is revealed by examining past changes in the statutory definition of state-mandated costs. As thoroughly discussed in *City of Sacramento* v. *State of California* (1984) 156 Cal.App.3d 182, 196-197 [203 Cal.Rptr. 258] disapproved on other grounds in *County of Los Angeles* v. *State of California, supra,* 43 Cal.3d at p. 58, fn. 10, the concept of federally mandated costs has provided local agencies with a financial escape valve ever since passage of the "Property Tax Relief Act of 1972." (Stats. 1972, ch. 1406, § 1, p. 2931.) That act limited local governments' power to levy property taxes, while requiring that they be reimbursed by the State for providing compulsory increased levels of service or

---

[13]When Governor Brown deleted the appropriations from A.B. 171, he stated that he was relying on the pronouncements in Statutes 1974, chapter 1284 and Statutes 1981, chapter 1090.

new programs. However, under Revenue and Taxation Code section 2271, "costs mandated by the federal government" were not subject to reimbursement and local governments were permitted to levy taxes in addition to the maximum property tax rate to pay such costs.

On November 6, 1979, the limitation on local government's ability to raise property taxes, and the duty of the State to reimburse for state-mandated costs, became a part of the California Constitution through the initiative process. Article XIII B, section 6, enacted at that time, directs state subvention similar in nature to that required by the preexisting provisions of Revenue and Taxation Code section 2207 and former section 2231. As a defense against this duty to reimburse local agencies, the Legislature began to insert disclaimers in bills which mandated costs on local agencies. It also amended Revenue and Taxation Code section 2206 to expand the definition of nonreimbursable "costs mandated by the federal government" to include the following: "costs resulting from enactment of a state law or regulation where failure to enact such law or regulation to meet specific federal program or service requirements would result in substantial monetary penalties or loss of funds to public or private persons in the state."

In applying this definition here, State offers nothing more than the bare legislative finding contained in Statutes 1974, chapter 1284, section 106. State contends that a federally mandated cost cannot, by definition, be a state-mandated cost. Therefore, if the cost is federally mandated, local agency reimbursement is not required. Although State's argument is correct in the abstract, neither the facts nor federal law supports the underlying assumption that there is a federal mandate.[14]

 Both the Board and the court had in evidence a letter from a responsible official of the federal Occupational Safety and Health Administration (OSHA). The letter emphasizes the independence of state and federal OSHA standards: "OSHA does not have jurisdiction over the fire departments of any political subdivision of a state whether the state has elected to have its own state plan under the OSHA act or not. . . . [¶] More specifically, in 1978, the State of California promulgated standards applicable to fire departments in California. Therefore, California standards, rather than

---

[14]We address this subject only because the trial court found that the costs were not federally mandated. Actually, State cannot raise this issue on appeal because of the waiver and administrative collateral estoppel doctrines. We note, however, where there is a quasi-judicial finding that a cost is state mandated, there is an implied finding that the cost is not federally mandated; the two concepts are mutually exclusive.

Moreover, our task is aided by the fact that interpretation of statutory language is purely a judicial function. Legislative declarations are not binding on the courts and are particularly suspect when they are the product of an attempt to avoid financial responsibility. (*City of Sacramento* v. *State of California, supra,* 156 Cal.App.3d at pp. 196-197.)

federal OSHA standards, are applicable to fire departments in that state. . . ." This theme is also reflected in a section of OSHA which expressly disclaims jurisdiction over local agencies such as County. (29 U.S.C. § 652(5).) Accordingly, as a matter of law, there are no federal standards for local government structural fire fighting clothing and equipment.

In short, while the Legislature's enactment of Cal/OSHA to comply with federal OSHA standards is commendable, it certainly was not compelled. Consequently, County's obedience to the 1978 executive orders is not federally mandated.

■ The trial court also properly invalidated the budget control language in Statutes 1981, chapter 1090, section 3 (fn. 7, ¶ 7, *ante*) because it violated the single subject rule.[15] This legislative restriction purported to make the reimbursement provisions of Revenue and Taxation Code section 2207 and former section 2231 unavailable to County.

■ The single subject rule essentially requires that a statute have only one subject matter and that the subject be clearly expressed in the statute's title. The rule's primary purpose is to prevent "log-rolling" in the enactment of laws. This disfavored practice occurs where a provision unrelated to a bill's main subject matter and title is included in it with the hope that the provision will remain unnoticed and unchallenged. By invalidating these unrelated clauses, the single subject rule prevents the passage of laws which otherwise might not have passed had the legislative mind been directed to them. (*Planned Parenthood Affiliates* v. *Swoap* (1985) 173 Cal.App.3d 1187, 1196 [219 Cal.Rptr. 664].) However, in order to minimize judicial interference in the Legislature's activities, the single subject rule is to be construed liberally. A provision violates the rule only if it does not promote the main purpose of the act or does not have a necessary and natural connection with that purpose. (*Metropolitan Water Dist.* v. *Marquardt* (1963) 59 Cal.2d 159, 172-173 [28 Cal.Rptr. 724, 379 P.2d 28].)

■ The stated purpose of chapter 1090 is to increase funds available for reimbursing certain claims. It describes itself as an "act making an appropriation to pay claims of local agencies and school districts for additional reimbursement for specified state-mandated local costs, awarded by the State Board of Control, and declaring the urgency thereof, to take effect immediately." (Stats. 1981, ch. 1090, p. 4191.) There is nothing in this intro-

---

[15]Article IV, section 9 of the California Constitution reads: "A statute shall embrace but one subject, which shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void. A statute may not be amended by reference to its title. A section of a statute may not be amended unless the section is re-enacted as amended."

duction alerting the reader to the fact that the bill prohibits the Board from entertaining claims pursuant to the Cal/OSHA executive orders. The control language does not modify or repeal these orders, nor does it abrogate the necessity for County's continuing compliance therewith. It simply places County's claims reimbursement process in limbo.

This special appropriations bill is similar in kind to appropriations in an annual budget act. Observations that have been made in connection with the enactment of a budget bill are appropriate here. "[T]he annual budget bill is particularly susceptible to abuse of [the single subject] rule. 'History tells us that the general appropriation bill presents a special temptation for the attachment of riders. It is a necessary and often popular bill which is certain of passage. If a rider can be attached to it, the rider can be adopted on the merits of the general appropriation bill without having to depend on its own merits for adoption.' [Citation.]" (*Planned Parenthood Affiliates* v. *Swoap, supra,* 173 Cal.App.3d at p. 1198.) Therefore, the annual budget bill must only concern the subject of appropriations to support the annual budget and may not constitutionally be used to substantively amend or change existing statutory law. (*Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 394 [211 Cal.Rptr. 758, 696 P.2d 150].) We see no reason to apply a less stringent standard to a special appropriations bill. Because the language in chapter 1090 prohibiting the Board from processing claims does not reasonably relate to the bill's stated purpose, it is invalid.

■ The budget control language in chapter 1090 is also invalid as a retroactive disclaimer of County's right to reimbursement for debts incurred in prior years. This legislative technique was condemned in *County of Sacramento* v. *Loeb, supra,* 160 Cal.App.3d at p. 446. There, the Legislature had enacted a Government Code section which prohibited using appropriations for any purpose which had been denied by any formal action of the Legislature. The State attempted to use this code section to uphold a special appropriations bill which had deleted County's Board-approved claims for costs which were incurred prior to the enactment of the code section. The court held that the code section did not apply retroactively to defeat County's claims: "A retroactive statute is one which relates back to a previous transaction and gives that transaction a legal effect different from that which it had under the law when it occurred. . . . 'Absent some clear policy requiring the contrary, statutes modifying liability in civil cases are not to be construed retroactively.'" (*Id.* at p. 459, quoting *Robinson* v. *Pediatric Affiliates Medical Group, Inc.* (1979) 98 Cal.App.3d 907, 912 [159 Cal.Rptr. 791].) Similarly, the control language in chapter 1090 does not apply retroactively to County's prior, Board-approved claims.

 Finally, the control language in section 28.40 of the 1981 Budget Act and section 26.00[16] of the 1983 and 1984 Budget Acts does not work to defeat County's claims. (Stats. 1981, ch. 99, § 28.40, p. 606; Stats. 1983, ch. 324, § 26.00, p. 1504; Stats. 1984, ch. 258, § 26.00.) This section is comprised of both substantive and procedural provisions. We are concerned primarily with those portions that purport to exonerate State from its constitutionally and statutorily imposed obligation to reimburse County's state-mandated costs.

The writ of mandate directed compliance with the procedural provisions of these sections and is not a point of dispute on appeal. Subsection (a) affords the Legislature one last opportunity to appropriate funds which are to be encumbered for the purpose of paying state-mandated costs, an invitation repeatedly rejected. Subsection (b) directs that the Department of Finance notify the chairpersons of the appropriate committees in each house and chairperson of the Joint Legislative Budget Committee of the need to encumber funds. Presumably, the objective of this procedure is to give the Legislature another opportunity to amend or repeal substantive legislation requiring local agencies to incur state-mandated costs. Again, the Legislature declined to act. Legislative action pursuant to subsection (b) could arguably ameliorate the plight of local agencies prospectively, but would be of no practical assistance to a local agency creditor seeking reimbursement for costs already incurred.

The first portion of each section, however, imposes a budgetary restriction on encumbering appropriated funds to reimburse for state-mandated costs arising out of compliance with the executive orders, absent a specific appropriation pursuant to subparagraph (b). For the reasons stated above, this substantive language is invalid under the single subject rule. It attempts to amend existing statutory law and is unrelated to the Budget Acts' main purpose of appropriating funds to support the annual budget. (*Association for Retarded Citizens* v. *Department of Developmental Services, supra,* 38 Cal.3d at p. 394.) Now unfettered by invalid restrictions, the appropriations involved in this case are reasonably available for reimbursement.

---

[16]Each of these sections contains the following language: "No funds appropriated by this act shall be encumbered for the purpose of funding any increased state costs or local governmental costs, or both such costs, arising from the issuance of an executive order as defined in section 2209 of the Revenue and Taxation Code or subject to the provisions of section 2231 of the Revenue and Taxation Code, unless (a) such funds to be encumbered are appropriated for such purpose, or (b) notification in writing of the necessity of the encumbrance of funds available to the state agency, department, board, bureau, office, or commission is given by the Department of Finance, at least 30 days before such encumbrance is made, to the chairperson of the committee in each house which considers appropriations and the Chairperson of the Joint Legislative Budget Committee, or such lesser time as the chairperson of the committee, or his or her designee, determines."

## C. The Legislature's Plenary Power to Regulate Worker Safety Does Not Affect the Right to Reimbursement

 State contends that article XIV, section 4 of the California Constitution vests the Legislature with unlimited plenary power to create and enforce a complete workers' compensation system. It postulates that the Legislature may determine that the interest in worker safety and health is furthered by requiring local agencies to bear the costs of safety devices. This non sequitur is advanced without citation of authority.

Article XIV, section 4 concerns the power to enact workers' compensation statutes and regulations. It does not focus on the issue of reimbursement for state-mandated costs, which is covered by Revenue and Taxation Code section 2207 and former section 2231, and article XIII B, section 6. Since these latter provisions do not effect a pro tanto repeal of the Legislature's plenary power over workers' compensation law (see *County of Los Angeles* v. *State of California, supra,* 43 Cal.3d 46), they do not conflict with article XIV, section 4.

Moreover, even though the reimbursement issue has come before the Legislature repeatedly since 1972, no law has been enacted to exempt compliance with workers' compensation executive orders from the mandatory reimbursement provisions of Revenue and Taxation Code section 2207 and former section 2231. Likewise, article XIII B, section 6 does not provide an exception to the obligation to reimburse local agencies for compliance with these safety orders.

## D. Pre-1980 Claims Are Reimbursable Under Article XIII B, Section 6, Effective July 1, 1980

 State further argues that to the extent County's claims for fiscal years 1978-1979 and 1979-1980 are predicated on the subvention provisions of article XIII B, section 6, they fall within a "window period" of nonreimbursement. This assertion emanates from section 6, subdivision (c), which states that the Legislature "[m]ay, but need not," provide reimbursement for mandates enacted before January 1, 1975. State reasons that because the constitutional amendment did not become effective until July 1, 1980, claims for costs incurred between January 1, 1975 and June 30, 1980, need not be reimbursed.

This notion was rejected in *City of Sacramento* v. *State of California, supra,* 156 Cal.App.3d at p. 182 on behalf of local agencies seeking reimbursement of unemployment insurance costs mandated by a 1978 statute. Basing its decision on well-settled principles of constitutional interpretation

and upon a prior published opinion of the Attorney General, the court interpreted section 6, subdivision (c) as follows: "[T]he Legislature *may* reimburse mandates enacted prior to January 1, 1975, and *must* reimburse mandates passed after that date, but does not have to begin such reimbursement until the effective date of article XIII B (July 1, 1980)." (*Id.* at p. 191, italics in original.) In other words, the amendment operates on "window period" mandates even though the reimbursement process may not actually commence until later.

We agree with this reasoning and find costs incurred by County under the 1978 executive orders subject to reimbursement under the Constitution.

E. *Claims Under Revenue and Taxation Code Section 2207 and Former Section 2231 Are Not Time-barred*

 Sate collaterally asserts that to the extent County bases its claims on Revenue and Taxation Code section 2207 and former section 2231, they are barred by Code of Civil Procedure sections 335 and 338, subdivision 1. This omnibus challenge to the order directing payment has no merit.

Code of Civil Procedure section 335 is a general introductory section to the statute of limitations for all matters except recovery of real property. Code of Civil Procedure section 338, subdivision 1 requires "[a]n action upon a liability created by statute" to be commenced within three years.

A claimant does not exhaust its administrative remedies and cannot come under the court's jurisdiction until the legislative process is complete. (*County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 77 [222 Cal.Rptr. 750].) Here, County pursued its remedy before the Board and prevailed. Thereafter, as required by law, appropriate legislation was introduced. Both the Board hearings and the subsequent efforts to secure legislative appropriations were part of the legislative process. (Former Rev. & Tax. Code, § 2255, subd. (a).) It was not until the legislation was enacted sans appropriations on September 30, 1981 (S.B. 1261) and February 12, 1982 (A.B. 171) that it became unmistakably clear that this process had ended and State had breached its duty to reimburse. At these respective moments of breach, County's right of action in traditional mandamus accrued. County's petition was filed on September 21, 1984, within the three-year statutory period.[17] (*Lerner* v. *Los Angeles City Board of Education, supra,* 59 Cal.2d at p. 398.)

---

[17]Technically, State has waived the statute of limitations defense because it was not raised in its answer. *(Ventura County Employees' Retirement Association* v. *Pope* (1978) 87 Cal.App.3d 938, 956 [151 Cal.Rptr. 695].)

F. *Government Code Section 17612's Remedy for Unfunded Mandates Does Not Supplant the Court's Order*

State continues its general attack on the order directing payment by arguing that the Legislature has "defined" the remedy available to a local agency if a mandate is unfunded. That remedy is found in Government Code section 17612, subdivision (b) and reads: "If the Legislature deletes from a local government claims bill funding for a mandate, the local agency . . . *may* file in the Superior Court of the County of Sacramento an action in declaratory relief to declare the mandate unenforceable and enjoin its enforcement." (Italics added.) (See also former Rev. & Tax. Code, § 2255, subd. (c), eff. Oct. 1, 1982.)

State hints that this procedure is the only remedy available to a local agency if funding is not provided. At oral argument, State admitted that this declaration of enforceability and injunction against enforcement would be prospective only. This remedy would provide no relief to local agencies which have complied with the executive orders.

We conclude that Government Code section 17612, subdivision (b) is inapplicable here because it did not become operative until January 1, 1985. It was not in place when the Board rendered its decision on November 20, 1979; when funding was deleted from S.B. 1261 (Sept. 30, 1981) and A.B. 171 (Feb. 12, 1982); or when this litigation commenced on September 21, 1984. ■ A party is not required to exhaust a remedy that was not in existence at the time the action was filed. (*Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 912, fn. 9 [141 Cal.Rptr. 133, 569 P.2d 727].) To abide by this post facto legislation now would condone legislative interference in a specific controversy already assigned to the judicial branch for resolution. (*Serrano* v. *Priest, supra,* 131 Cal.App.3d at p. 201.)

Also, this remedy is purely a discretionary course of action. By using the permissive word "may," the Legislature did not intend to override article XIII B, section 6 and Revenue and Taxation Code section 2207 and former section 2231. These constitutional and statutory imprimaturs each impose upon the State an obligation to reimburse for state-mandated costs. Once that determination is finally made, the State is under a clear and present ministerial duty to reimburse. In the absence of compliance, traditional mandamus lies. (Code Civ. Proc., § 1085.)[18]

---

[18]We leave undecided the question of whether this type of legislation could ever be held to override California Constitution, article XIII B, section 6. The Constitution of the State is supreme. Any statute in conflict therewith is invalid. (*County of Los Angeles* v. *Payne, supra,* 8 Cal.2d at p. 574.)

Similarly, former Revenue and Taxation Code section 2255, subdivision (c) cannot abrogate the constitutional directive to reimburse.

## G. *The Court's Order Properly Allows County the Right of Offset*

As the first in a series of objections to portions of the judgment which assist in the reimbursement process, State argues that the court has improperly authorized County to satisfy its claims by offsetting fines and forfeitures due to State. (Fn. 7, ¶ 5, *ante.*) The fines and forfeitures are those found in Penal Code sections 1463.02, 1463.03, 1463.5a and 1464; Government Code sections 13967, 26822.3 and 72056; Fish and Game Code section 13100; Health and Safety Code section 11502; and Vehicle Code sections 1660.7, 42004 and 41103.5.[19]

Broadly speaking, these statutes require County to periodically transfer all or part of the fines and forfeitures collected by it for specified law violations to the State Treasury. They are to be held there "to the credit" of various state agencies, or for payment into specific funds. State contends that since these statutes require mandatory, regular transfers and do not expressly permit diversion for other purposes, the court had no power to allow County to offset. State cites no authority for this contention.

The right to offset is a long-established principle of equity. Either party to a transaction involving mutual debits and credits can strike a balance, holding himself owing or entitled only to the net difference. (*Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352, 362 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].) Although this doctrine exists independent of statute, its governing principle has been partially codified (Code Civ. Proc., § 431.70) (limited to cross-demands for money).

The doctrine has been applied in favor of a local agency against the State. In *County of Sacramento* v. *Lackner* (1979) 97 Cal.App.3d 576 [159 Cal.Rptr. 1], for example, the court of appeal upheld a trial court's decision to grant a writ of mandate that ordered funds awarded the County under a favorable judgment to be offset against its current liabilities to the State under the Medi-Cal program. The court stated that such an order does not interfere with the "Legislature's control over the 'submission, approval and enforcement of budgets ....' " (*Id.* at p. 592, quoting Cal. Const., art. IV, § 12, subd. (e).)

The order herein likewise does not impinge upon the Legislature's exclusive power to appropriate funds or control budget matters. The identi-

---

[19] At oral argument, County conceded that the order authorizing offset of Fish and Game Code section 13100 fines and forfeitures is inappropriate. These collected funds must be spent exclusively for protection, conservation, propagation or preservation of fish, game, mollusks, or crustaceans, and for administration and enforcement of laws relating thereto, or for any such purpose. (Cal. Const., art. XVI, § 9; 20 Ops. Cal. Atty. Gen. 110 (1952).)

fied fines and forfeitures are collected by the County for statutory law violations. Some of these funds remain with the County, while others are transferred to the State. State's portions are uncertain as to amount and date of transfer. State does not come into actual possession of these funds until they are transferred. State's holding of these funds "to the credit" of a particular agency, or for payment to a specific fund, does not commence until their receipt. Until that time, they are unencumbered, unrestricted and subject to offset.

## H. *State's Use of its Statutory Offset Authority Was Properly Enjoined*

State further contends that the trial court exceeded its jurisdiction by enjoining the exercise of State's statutory offset authority until County is fully reimbursed. (Fn. 7, ¶ 11, *ante*.)[20] This order complemented that portion of the order discussed, *infra,* which allowed County to temporarily offset fines and forfeitures as an aid in the reimbursement process.

State correctly observes that it has not unlawfully used its offset authority during the course of this dispute. However, State has not needed to do so because it has adopted other means of avoiding payment on County's claims. In view of State's manifest reluctance to reimburse, and its otherwise unencumbered statutory right of offset, the trial court was well within its authority to prevent this method of frustrating County's collection efforts from occurring. (See *County of Los Angeles* v. *State of California* (1984) 153 Cal.App.3d 568 [200 Cal.Rptr. 394].)

## I. *The Injunction Against Reversion or Dissipation of Undisbursed Appropriations Is Proper*

State continues that the order (fn. 7, ¶ 4, *ante*) enjoining it from directly or indirectly reverting the reimbursement award sum from the general fund line item accounts, and from otherwise dissipating that sum in a manner that would make it unavailable to satisfy this court's judgment, violates Government Code section 16304.1.[21] This section reverts undis-

---

[20]Government Code section 12419.5 provides: "The Controller may, in his discretion, offset any amount due a state agency from a person or entity, against any amount owing such person or entity by any state agency. The Controller may deduct from the claim, and draw his warrants for the amounts offset in favor of the respective state agencies to which due, and, for any balance, in favor of the claimant. . . . The amount due any person or entity from the state or any agency thereof is the net amount otherwise owing such person or entity after any offset as in this section provided." (See also *Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 975-976 [185 Cal.Rptr. 49].)

[21]Government Code section 16304.1 provides: "Disbursements in liquidation of encumbrances may be made before or during the two years following the last day an appropriation is available for encumbrance . . . . Whenever, during [such two-year period], the Director of

bursed balances in any appropriation to the fund from which the appropriation was made. No authority is cited for State's proposition. To the contrary, *County of Sacramento* v. *Loeb, supra,* 160 Cal.App.3d at pp. 456-457 expressly confirms this type of ancillary remedy as a legitimate exercise of the court's authority to assist in collecting on an adjudicated debt, the payment of which has been delayed all too long.

That portion of the order restraining reversion is particularly innocuous because it only affects undisbursed balances in an appropriation. At the time of reversion, it is crystal clear that these remaining funds are unneeded for the primary purpose for which appropriated; otherwise, they would not exist. Moreover, that portion of the order restraining dissipation of the reimbursement award sum in a manner that would make it unavailable to satisfy a court's judgment is similarly a proper exercise of the court's authority. By not reimbursing County for the state-mandated costs, State would be contravening its constitutional and statutory obligations to subvent. To the extent it is not reimbursed, County would be compelled, contrary to law, to bear the cost of complying with a state-imposed obligation.

## J. *The Auditor Controller and the Specified Funds Are Not Indispensable Parties*

State next contends that the Auditor Controller of Los Angeles County and the "specified" fines and forfeitures County was allowed to offset are indispensable parties. Failure to join them in the action or to serve them with process purportedly renders the trial court's order void as in excess of its jurisdiction.[22] State cites only the general statutory definition of an indispensable party (Code Civ. Proc., § 389) to support this assertion.

The Auditor Controller is an officer of the County and is subject to the

---

Finance determines that the project for which the appropriation was made is completed and that a portion of the appropriation is not necessary for disbursements, such portion shall, upon order of the Director of Finance, revert to and become a part of the fund from which the appropriation was made. Upon the expiration of two years . . . following the last day of the period of its availability, the undisbursed balance in any appropriation shall revert to and become a part of the fund from which the appropriation was made. . . ."

[22]Code of Civil Procedure section 389, subdivision (a) provides: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party."

direction and control of the County board of supervisors. (Gov. Code, §§ 24000, subds. (d), (e), 26880; L.A. County Code, § 2.10.010.) He is indirectly represented in these proceedings because his principal, the County, is the party litigant. Additionally, he claims no personal interest in the fines and forfeitures and his pro forma absence in no way impedes complete relief.

The funds created by the collected fines and forfeitures also are not indispensable parties. This is not an in rem proceeding, and the ownership of a particular stake is not in dispute. Rather, this is an action to compel a ministerial obligation imposed by law. Complete relief may be afforded without including the specified funds as a party.

### K. *County is Entitled to Interest*

State insists that an award of interest to County unfairly penalizes State for not paying claims which it was prohibited by law from paying under Statutes 1981, chapter 1090, section 3. This argument is unavailing.

Civil Code section 3287, subdivision (a) allows interest to any person "entitled to recover damages certain, or capable of being made certain by calculation . . . ." Interest begins on the day that the right to recover vests in the claimant. By its own terms, this section applies to any judgment debtor, "including the state . . . or any political subdivision of the state."

The judgment orders interest at the legal rate from September 30, 1981, for reimbursement funds originally contained in S.B. 1261, and from February 12, 1982, for the funds originally contained in A.B. 171. These are the respective dates that the bills were enacted without appropriations. As we concluded earlier, County's cause of action did not arise and its right to recover did not vest until this legislative process was complete. County offers no authority to suggest that any other vesting date is appropriate.

Furthermore, State cannot avoid its obligation to pay interest by relying on the invalid budget control language in Statutes 1981, chapter 1090, section 3. "An invalid statute voluntarily enacted and promulgated by the state is not a defense to its obligation to pay interest under Civil Code section 3287, subdivision (a)." (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 404 [197 Cal.Rptr. 843, 673 P.2d 720].)

APPEAL IN CASE NO. 2 CIVIL B011941

(Rincon et al. Case)

The procedural history and legal issues raised in the *Rincon et al.* appeal are essentially similar to those discussed in the County of Los Angeles matter.

County, although not a party to this underlying trial court proceeding, filed a test claim with the Board. All parties agree that County represented the interests of the named respondents here.

The Board action resulted in a finding of state-mandated costs. It further found that Rincon et al. were entitled to reimbursement in the amount of $39,432. After the Legislature and the Governor, respectively, deleted the funding from the two appropriations bills, S.B. 1261 and A.B. 171, Rincon et al. filed a petition for writ of mandate and declaratory relief. This action was consolidated for hearing in the trial court with the action in B011942 (County of Los Angeles matter). The within judgment was also signed, filed and entered on February 6, 1985. The reimbursement order was directed against the 1984-1985 budget appropriations. State appeals from that judgment.

The court here included a judicial determination that the Board, or its successors, hear and approve the claims of certain other respondents for costs incurred in connection with the state-mandated program. (Fn. 7, ¶ 9, *ante*.) This special directive was necessary because the claims of these respondents (petitioners below) have not yet been determined.[23] Since we have ruled that State is barred by the doctrines of waiver and administrative collateral estoppel from raising the state mandate issue, the validity of these claims becomes a question of law susceptible to but one conclusion, and mandamus properly lies. (*County of Sacramento* v. *Loeb, supra,* 160 Cal.App.3d at p. 453.) This portion of the order also underscores, for the Board's edification, the determination that the statutory restriction on the Board authority to proceed is invalid.[24]

Once again, our determinations and conclusions in the County of Los Angeles matter are equally applicable here.

APPEAL IN CASE NO. 2 CIVIL B006078

(Carmel Valley et al.)

Again, the procedural history and legal issues raised in this appeal are essentially similar to those discussed in the County of Los Angeles matter.

County filed a test claim with the Board. All parties agree that the County represented the interests of the named respondents here.

---

[23]Responding to the budget control language directing it to refuse to process these claims, the Board declined to hear these matters.

[24]Because certain claims have not yet been processed, we assume that the issue of the amount of reimbursement may still be at large. Our record is not clear on this point.

On December 17, 1980, the Board found that a state mandate existed and that specific amounts of reimbursement were due several respondents totalling $159,663.80. Following the refusal of the Legislature to appropriate funds for reimbursement, Carmel Valley et al. filed a petition for writ of mandate and declaratory relief on January 3, 1983. Judgment was entered on May 23, 1984. The reimbursement order was directed against 1983-1984 budget appropriations.

The judgment differs from the other two because it does not decree a specific reimbursement amount. The trial court determined that even though the Board had approved the claims, the State was not precluded from contesting that determination. The court's reasons were that the State, in its answer, had denied that the money claimed was actually spent, and that Board approval had not been implemented by subsequent legislation. The court concluded that the reimbursement process, of which the Board action was an intrinsic part, was "aborted."

We disagree with this portion of the court's analysis. The moment S.B. 1261 and A.B. 171 were enacted into law without appropriations, Carmel Valley et al. had exhausted their administrative remedies and were entitled to seek a writ of mandate. At the time of trial, State was barred by the doctrines of waiver and administrative collateral estoppel from contesting the state mandate issue or the amount of reimbursement. The trial court therefore should have rendered a judgment for the amount of reimbursement. Having failed to do so, this fact-finding responsibility falls upon this court. Although we ordinarily are not equipped to handle this function, the writ of mandate in this case identifies the amount of the approved claims as $159,663.80. We accordingly will amend the judgment to reflect that amount.

The trial court also predicated its judgment for Carmel Valley et al. solely on the basis of Revenue and Taxation Code section 2207 and former section 2231. In doing so, the court did not have the benefit of the decision in *City of Sacramento* v. *State of California, supra,* 156 Cal.App.3d at p. 182.[25] That case held that mandates passed after January 1, 1975, must be reimbursed pursuant to article XIII B, section 6 of the California Constitution, but that reimbursement need not commence until July 1, 1980. In light of this rule, we conclude that the trial court's decision ordering reimbursement is also supported by article XIII B, section 6.

---

[25]The decision in *City of Sacramento, supra,* was filed just one day before the trial court signed the written order in this case. The Revenue and Taxation Code sections on which the court relied were operational before the costs claimed in this case were incurred.

State raises another point specific to this particular appeal. In its answer to the writ petition, State admitted that the local agency expenditures were state mandated. Consequently, the issue was not contested at the trial court level. However, State vigorously contends here that it is not bound by its trial court admissions because the state mandate issue is purely a question of law.

 State is correct in contending that an appellate court is not limited by the interpretation of statutes given by the trial court. (*City of Merced* v. *State of California, supra,* 153 Cal.App.3d at p. 781.) However, State's victory on this point is Pyrrhic. Regardless of how the issue is characterized, State is precluded from contesting the Board findings on appeal because of the independent application of the doctrines of waiver and administrative collateral estoppel. These doctrines would also have applied at the trial court level if State's answer had raised the issue of state mandate in the first instance.

We also reject State's argument, advanced for the first time on appeal, that the executive orders of 1978 initially implement legislation enacted prior to January 1, 1975, and that state reimbursement is therefore discretionary. (Cal. Const., art. XIII B, § 6, subd. (c).) Again, State is barred by the doctrines of waiver and administrative collateral estoppel from arguing that costs incurred under the executive orders are not subject to reimbursement.

State continues that the *Carmel Valley* judgment against the Department of Industrial Relations is erroneous. Since the department was never made a party in the suit, nor served with process, the resulting judgment reflects a denial of due process and is in excess of the court's jurisdiction. (See Code Civ. Proc., § 389; fn. 22, *ante.*)

This assertion is but a variant of the same argument advanced in the County of Los Angeles case, *supra,* which we rejected as meritless. The department is part of the State of California. (Lab. Code, § 50.) State extensively argued the department's position and even offered into evidence a declaration from the chief of fiscal accounting of the department. As stated earlier, agents of the same government are in privity with each other. (*People* v. *Sims, supra,* 32 Cal.3d at p. 487.)

*Ross* v. *Superior Court, supra,* 19 Cal.3d at p. 899 demonstrates how, through the notion of privity, a government agent can be held in contempt for knowingly violating a court order issued against another agent of the same government. There, a court in an earlier proceeding had decided that defendant Department of Health and Welfare must pay unlawfully withheld welfare benefits to qualified recipients. The County Board of Supervisors,

who were not parties to this action, knew about the court's order but refused to comply. The Supreme Court affirmed a trial court decision holding the Board in contempt for violating the order directing payment. The court reasoned that, as an agent of the Department of Health and Welfare, the Board did not collectively or individually need to be named as a party in order to be bound by a court order of which they had actual knowledge.

The determinations and conclusions in the County of Los Angeles case are likewise applicable here.

### MODIFICATION OF JUDGMENTS IN ALL THREE APPEALS

The trial court judgments ordering reimbursement from specific account appropriations were entered many months ago. We will affirm these judgments and thereby validate the trial courts' determination that funds already appropriated for the State Department of Industrial Relations were reasonably available for payment at the time of the courts' orders.

Due to the passage of time, we requested State at oral argument to confirm whether the appropriations designated in the respective judgments are still available for encumbrance. State's counsel responded by rearguing that the weight of the evidence did not support the trial courts' findings that specific funds were reasonably available for reimbursement. Counsel further hinted that the funds may not actually be available.

We hope that counsel for the State is mistaken. But in order to emphasize our strong and unequivocal determination that the local agency petitioners be promptly reimbursed, we will take judicial notice of the enactment of the 1985-1986 Budget Act (Stats. 1985, ch. 111) and the 1986-1987 Budget Act (Stats. 1986, ch. 186). (*Serrano* v. *Priest, supra,* 131 Cal.App.3d at p. 197.) Both acts appropriate money for the State Department of Industrial Relations and fund the identical account numbers referred to in the trial courts' judgments. They are:

| Account Numbers | 1985-1986 Budget Act | 1986-1987 Budget Act |
| --- | --- | --- |
| 8350-001-001 | $94,673,000 | $106,153,000 |
| 8350-001-452 | 2,295,000 | 2,514,000 |
| 8350-001-453 | 2,859,000 | 2,935,000 |
| 8350-001-890 | 16,753,000 | 17,864,000 |

An appellate court is empowered to add a directive that the trial court order be modified to include charging orders against funds appropriated by subsequent budget acts. (*Serrano* v. *Priest, supra,* 131 Cal.App.3d at pp. 198, 201.) We do so here with respect to all three judgments.

## DISPOSITION

*2d Civ. B011942 (County of Los Angeles Case)*

The judgment is modified as follows:

(1) The following sentence is added to paragraph 2: "If the hereinabove described funds are not available for reimbursement, the warrants shall be drawn against funds in the same account numbers enacted in the 1985-86 and 1986-87 Budget Acts."

(2) The words "Fish and Game Code Section 13100" are deleted from paragraph 5.

(3) The peremptory writ of mandate is modified to command the Controller to draw warrants, if necessary, against the same account numbers identified in the judgment as appropriated by the 1985-1986 and 1986-1987 Budget Acts.

As modified, the judgment is affirmed. Respondents to recover costs on appeal.

*2d Civ. B011941 (Rincon et al. Case)*

The judgment is modified as follows:

(1) The following sentence is added to paragraph 2: "If the hereinabove described funds are not available for reimbursement, the warrants shall be drawn against funds in the same account numbers enacted in the 1985-86 and 1986-87 Budget Acts."

(2) The peremptory writ of mandate is modified to command the Controller to draw warrants, if necessary, against the same account numbers identified in the judgment as appropriated by the 1985-1986 and 1986-1987 Budget Acts.

As modified, the judgment is affirmed. Respondents to recover costs on appeal.

*2d Civ. B006078 (Carmel Valley et al. Case)*

The judgment is modified as follows:

(1) The following sentences are added to paragraph 2: "The reimbursement amounts total $159,663.80. If the hereinabove described funds are not available for reimbursement, the warrants shall be drawn against funds in the same account numbers enacted in the 1985-86 and 1986-87 Budget Acts."

(2) The peremptory writ of mandate is modified to command the Controller to draw warrants, if necessary, against the same account numbers identified in the judgment as appropriated by the 1985-1986 and 1986-1987 Budget Acts.

As modified, the judgment is affirmed. Respondents to recover costs on appeal.

Ashby, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied March 17, 1987, and appellants' petition for review by the Supreme Court was denied May 14, 1987. Eagleson, J., did not participate therein.