[No. C056833. Third Dist. Feb. 6, 2009.]

DEPARTMENT OF FINANCE, Plaintiff and Appellant, v.
COMMISSION ON STATE MANDATES, Defendant and Respondent.

1356

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Christopher E. Krueger, Assistant Attorney General, Douglas J. Woods, Jill Bowers and Jack Woodside, Deputy Attorneys General, for Plaintiff and Appellant.

Camille Shelton for Defendant and Respondent.

## OPINION

**BUTZ, J.**—Article XIII B, section 6 of the California Constitution[1] requires the state to bear the costs of new mandates on local government. However, if a local government entity voluntarily undertakes the costs, they do not constitute a reimbursable state mandate. (See, e.g., *San Diego Unified School Dist. v. Commission on State Mandates* (2004) 33 Cal.4th 859, 884–887 [16 Cal.Rptr.3d 466, 94 P.3d 589] (*San Diego Unified School Dist.*); *Department of Finance v. Commission on State Mandates* (*Kern High School Dist.*) (2003)

---

[1] Article references are to the California Constitution.

Article XIII B, section 6, subdivision (a), in pertinent part, states as follows: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse that local government for the costs of the program or increased level of service, [subject to specified exceptions]."

30 Cal.4th 727, 742–745 [134 Cal.Rptr.2d 237, 68 P.3d 1203] (*Kern High School Dist.*).) The Public Safety Officers Procedural Bill of Rights Act (POBRA),[2] initially enacted in 1976 (Stats. 1976, ch. 465, § 1, p. 1202), requires state and local government agencies that employ peace officers to provide them with procedural rights and protections when they are subjected to investigation, interrogation or discipline. (Gov. Code, § 3300 et seq.)

In this case plaintiff state Department of Finance (Finance) petitioned for a writ of administrative mandamus to overturn the decision of defendant Commission on State Mandates (the Commission) that POBRA constitutes a state-mandated program for school districts and special districts that employ peace officers. The superior court denied the petition. We decide POBRA is not a reimbursable mandate as to school districts and special districts that are permitted by statute, but not required, to employ peace officers who supplement the general law enforcement units of cities and counties. The judgment denying Finance's petition for writ of administrative mandamus is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1995, the City of Sacramento filed a test claim with the Commission pursuant to the versions of Government Code sections 17521 and 17560 then in effect, seeking reimbursement under article XIII B, section 6, of the costs incurred in complying with the POBRA procedural requirements. In 1999, pursuant to the version of Government Code section 17551 then in effect, the Commission held a public hearing on the test claim and issued a statement of decision determining that certain POBRA procedural protections exceeded federal and state constitutional due process requirements and imposed reimbursable state-mandated costs upon cities, counties, school districts and special districts under article XIII B, section 6. In 2000, pursuant to Government Code section 17557, the Commission adopted parameters and guidelines for the reimbursement of the costs incurred by those local government entities in providing the POBRA procedural protections determined to be state mandated.

In 2005, the Legislature enacted Government Code section 3313, directing the Commission to "review its statement of decision regarding the [POBRA] test claim and make any modifications necessary to this decision to clarify whether the subject legislation imposed a mandate consistent with the California Supreme Court Decision in [*San Diego Unified School Dist.*, *supra*,] 33 Cal.4th 859 and other applicable court decisions." (Gov. Code, § 3313, added by Stats. 2005, ch. 72, § 6, eff. July 19, 2005.)

---

[2] The statute's commonly used name is the Peace Officers Bill of Rights Act and the acronym POBRA is one used by the Supreme Court. (See *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 317 & fn. 1, 320 [74 Cal.Rptr.3d 891, 180 P.3d 935].)

Pursuant to Government Code section 3313, on April 26, 2006, the Commission held a public hearing. The only pertinent factual "testimony" at the hearing was an assertion that most school districts do not employ peace officers: "Of the approximately 1,200 local educational agencies receiving state school safety grant funding, only approximately 140 of those reported using the funding for hiring peace officers." After the matter was submitted, the Commission adopted a statement of decision reconsidering its 1999 statement of decision. The Commission decided that POBRA imposes, consistent with *San Diego Unified School Dist., supra,* 33 Cal.4th 859, a partly reimbursable state-mandated program on cities, counties, school districts, and special districts identified in Government Code section 3301 that employ peace officers. As to the school districts and special districts, the Commission reasoned as follows:

"For the reasons below, the Commission finds that the [POBRA] legislation constitutes a state-mandated program for school districts and the special districts identified in Government Code section 3301 that employ peace officers.

"Under a strict application of the *City of Merced* [*v. State of California* (1984) 153 Cal.App.3d 777 [200 Cal.Rptr. 642]] case, the requirements of the [POBRA] legislation would not constitute a state-mandated program within the meaning of article XIII B, section 6 for school districts and the special districts that employ peace officers 'for the simple reason' that the ability of the school district or special district to decide whether to employ peace officers 'could control or perhaps even avoid the extra costs' of the [POBRA] legislation. But here, the Legislature has declared that, as a matter of statewide concern, it is necessary for [POBRA] to apply to all public safety officers, as defined in the legislation. As previously indicated, the California Supreme Court [in *Baggett v. Gates* (1982) 32 Cal.3d 128, 139–141 [185 Cal.Rptr. 232, 649 P.2d 874]] concluded that the peace officers identified in Government Code section 3301 of the [POBRA] legislation provide an 'essential service' to the public and that the consequences of a breakdown in employment relations between peace officers and their employers would create a clear and present threat to the health, safety, and welfare of the citizens of the state.

"In addition, in 2001, the Supreme Court [in *In re Randy G.* (2001) 26 Cal.4th 556, 562–563 [110 Cal.Rptr.2d 516, 28 P.3d 239]] determined that school districts, apart from education, have an 'obligation to protect pupils from other children, and also to protect teachers themselves from violence by the few students whose conduct in recent years has prompted national concern.' The court further held that California fulfills its obligations under the safe schools provision of the Constitution (Cal. Const., art. I, § 28,

subd. (c)) by permitting local school districts to establish a police or security department to enforce rules governing student conduct and discipline. The arguments by the school districts regarding the safe schools provision of the Constitution caused the Supreme Court in *San Diego Unified [School Dist.]* to question the application of the *City of Merced* case. [¶] . . . [¶]

"Thus, as indicated by the Supreme Court in *San Diego Unified [School Dist., supra,* 33 Cal.4th 859], a finding that the [POBRA] legislation does not constitute a state-mandated program for school districts and special districts identified in Government Code section 3301 would conflict with past decisions like *Carmel Valley [Fire Protection Dist. v. State of California* (1987) 190 Cal.App.3d 521, 537 [234 Cal.Rptr. 795]], where the court found a mandated program for providing protective clothing and safety equipment to firefighters and made it clear that '[p]olice and fire protection are two of the most essential and basic functions of local government.' The constitutional definition of 'local government' for purposes of article XIII B, section 6 includes school districts and special districts. (Cal. Const., art. XIII B, § 8[, subd. (d)].)

"Accordingly, the Commission finds that [POBRA] constitutes a state-mandated program for school districts that employ peace officers. The Commission further finds that [POBRA] constitutes a state-mandated program for the special districts identified in Government Code section 3301. These districts include police protection districts, harbor or port police, transit police, peace officers employed by airport districts, peace officers employed by a housing authority, and peace officers employed by fire protection districts." (Fns. omitted.)

In January 2007, Finance petitioned for a writ of administrative mandamus to overturn the decision of the Commission as to school districts and special districts permitted but not required to hire peace officers. The Commission answered, opposing the petition. After oral argument the matter was submitted. Thereafter, on July 3, 2007, the trial court issued its ruling, denying the petition on the following essential reasoning:

"As a practical matter, the establishment of a police department and the employment of peace officers by school districts, community college districts and other local agencies is not an optional program: when the districts and agencies decide to exercise their statutory authority to employ peace officers, they do not have a genuine choice of alternative measures that meet their agency-specific needs for security and law enforcement, such as a large urban school district's need for security and police officers to supplement city

police or a municipal water district's need for park rangers with the authority and powers conferred upon peace officers to issue citations and make arrests in district recreational facilities. ([Pen.] Code, § 830.34, *subd. (d)* [subd. (*d*)] & Wat. Code, [§ 71341.5, added by] Stats. 2004, ch. 799, [§§ 1 & 2]; [see] Sen. Com. on Public Safety, analysis of Assem. Bill No. 1119 [(2003–2004 Reg. Sess.)] [granting 'essential authority' to municipal water districts to employ park rangers with the powers conferred on peace officers by Pen. Code, § 830.34, *subd. (d)*,] [italics added].) Rather, the specific security and law enforcement needs of the districts and agencies compel their decisions to employ peace officers and prevent them from controlling or avoiding the costs of providing [POBRA] procedural protections, much as student misconduct that jeopardizes the safe, secure and peaceful learning environment for other students may provide the practical compulsion for a school district to pursue discretionary expulsion proceedings and subject the district to the costs of mandated hearing procedures. (See *San Diego Unified School Dist., supra*, 33 Cal.4th at p. 887, fn. 22.) In marked contrast, the city in *City of Merced* had options to acquire property by eminent domain, by purchase or by other means and was not forced to proceed by eminent domain with its required payment for business goodwill, while the school districts in *Kern High School Dist.* could continue to operate and educate their students without participating in specified educational grant programs and without incurring the mandatory notice and agenda costs associated with the grant programs.

"To the extent that school districts, community college districts and other local government agencies do exercise discretion in deciding to employ peace officers identified in Government Code section 3301, the decisions do not involve the type of discretion that would or should preclude reimbursement of state-mandated program costs under [article XIII B,] section 6. When the districts and agencies decide to use their specific statutory authorities and powers to employ peace officers, they determine how to use the authorities and powers to fulfill their existing obligations and functions, not to undertake new program activities. If such discretionary decisions by the districts and agencies are found to foreclose the districts and agencies from obtaining reimbursement of the [POBRA] costs triggered by their employment of peace officers, the state would be able to shift financial responsibility for carrying out new state-mandated program activities to the districts and agencies, in contravention of the intent underlying [article XIII B,] section 6 and [Government Code] section 17514. (*San Diego Unified School Dist., supra*, 33 Cal.4th at pp. 887–888.) Similarly, as the California Supreme Court observed in *San Diego Unified School Dist.*, the Court of Appeal in *Carmel Valley [Fire Protection Dist. v. State of California]*, *supra*, 190 Cal.App.3d 521, apparently did not contemplate that discretionary decisions by local fire protection agencies regarding the number of firefighters the agencies needed to employ

to fulfill their essential fire-protection functions would foreclose reimbursement of the costs incurred by the agencies for state-mandated protective clothing and safety equipment; such foreclosure of reimbursement, based on the agencies' discretion to limit the number of firefighters they employed and thereby control or even avoid the mandated costs, would contravene the intent underlying [article XIII B,] section 6 and [Government Code] section 17514. ([*San Diego Unified School Dist., supra,*] 33 Cal.4th at pp. 887–888.)" (Fn. omitted.)

Finance appeals from the judgment denying the petition.

## DISCUSSION

Finance contends that the trial court erred in upholding the Commission's determination that, as to districts not compelled by statute to employ peace officers, the POBRA requirements are a reimbursable state mandate.[3] Finance argues that the judgment rests on the insupportable legal conclusion that these districts are, as a practical matter, compelled to exercise their authority to hire peace officers.[4] We agree.

### I.  Case Law on Incurring Costs Voluntarily

The issue here principally turns on three leading opinions, commencing with *City of Merced v. State of California, supra,* 153 Cal.App.3d 777 (*City of Merced*). *City of Merced* holds that an amendment of the eminent domain law requiring compensation for business goodwill is not a reimbursable mandate under Revenue and Taxation Code former section 2231, the antecedent of article XIII B, section 6. (*City of Merced, supra,* 153 Cal.App.3d at p. 783.) The *City of Merced* rationale is that because the city was not required to obtain property by eminent domain, the program permitting use of that power was voluntary, and the requirement of compensation for business goodwill accordingly was not a mandate. "[W]hether a city or county decides to exercise eminent domain is, essentially, an option of the city or county, rather than a mandate of the state. The fundamental concept is that the city or county is not required to exercise eminent domain. If, however, the power of

---

[3] Government Code section 17514 states: " 'Costs mandated by the state' means any increased costs which a local agency or school district is required to incur after July 1, 1980, as a result of any statute enacted on or after January 1, 1975, or any executive order implementing any statute enacted on or after January 1, 1975, which mandates a new program or higher level of service of an existing program within the meaning of Section 6 of Article XIIIB of the California Constitution."

[4] Whether a statute imposes a reimbursable state mandate is said to be a question of law. (E.g., *County of San Diego v. State of California* (1997) 15 Cal.4th 68, 109 [61 Cal.Rptr.2d 134, 931 P.2d 312].) In any event, that is the way the parties have litigated the issue in this case.

eminent domain is exercised, then the city will be required to pay for loss of goodwill. Thus, payment for loss of goodwill is not a state-mandated cost." (*Ibid.*)

*City of Merced* is critiqued in the second case of the triad, *Kern High School Dist., supra*, 30 Cal.4th at pages 737–740. In *Kern High School Dist.*, the Commission decided that two statutes requiring school site councils and advisory committees for certain educational programs to provide notice of meetings and to post agendas for those meetings constituted a reimbursable state mandate under article XIII B, section 6. The Supreme Court held that the statutes do not constitute a reimbursable state mandate, as districts were neither legally compelled nor as a practical matter compelled to participate in the programs. (30 Cal.4th at pp. 745, 754.)

In *Kern High School Dist.*, the Department of Finance asserted in its brief that based upon the language of article XIII B, section 6, and on the *City of Merced*, "a reimbursable state mandate arises only if a local entity is 'required' or 'commanded'—that is, legally compelled—to participate in a program (or to provide a service) that, in turn, leads unavoidably to increasing the costs incurred by the entity." (*Kern High School Dist., supra*, 30 Cal.4th at p. 741.) The Supreme Court said, "[T]he core point articulated by the court in *City of Merced* is that activities undertaken at the option or discretion of a local government entity (that is, actions undertaken without any legal compulsion or threat of penalty for nonparticipation) do not trigger a state mandate . . . ." (*Id.* at p. 742.) The high court decided that, with one possible exception, the programs in issue were not legally compelled and that the possible exception was not a mandate because the state supplied sufficient funding to cover the additional costs. (*Id.* at pp. 743–748.)

The reimbursable mandate proponents argued that the legal compulsion standard was too narrow and that they should also be reimbursed because they had been compelled "as a *practical* matter" to participate in the programs. (*Kern High School Dist., supra*, 30 Cal.4th at p. 731.) The Supreme Court summarized its response to that claim as follows: "Although we do not foreclose the possibility that a reimbursable state mandate might be found in circumstances short of legal compulsion—for example, if the state were to impose a substantial penalty (independent of the program funds at issue) upon any local entity that declined to participate in a given program— claimants here faced no such practical compulsion. Instead, although claimants argue that they have had 'no true option or choice' other than to participate in the underlying funded educational programs, the asserted compulsion in this case stems only from the circumstance that claimants have

found the benefits of various funded programs 'too good to refuse'—even though, as a condition of program participation, they have been forced to incur some costs. On the facts presented, the cost of compliance with conditions of participation in these funded programs does not amount to a reimbursable state mandate." (*Ibid.*)

"In sum, the circumstances presented in the case before us do not constitute the type of nonlegal compulsion that reasonably could constitute, in claimants' phrasing, a 'de facto' reimbursable state mandate. Contrary to the situation that we described in *City of Sacramento* [*v. State of California* (1990)] 50 Cal.3d 51 [266 Cal.Rptr. 139, 785 P.2d 522], a claimant that elects to discontinue participation in one of the programs here at issue does not face 'certain and severe . . . penalties' such as 'double . . . taxation' or other 'draconian' consequences (*id.*, at p. 74), but simply must adjust to the withdrawal of grant money along with the lifting of program obligations. Such circumstances do not constitute a reimbursable state mandate for purposes of article XIII B, section 6." (*Kern High School Dist., supra*, 30 Cal.4th at p. 754.)

The last case of the triad that governs this case is *San Diego Unified School Dist., supra*, 33 Cal.4th 859. In *San Diego Unified School Dist.*, the key issue was whether state requirements for expulsion hearings, not compelled by state criteria for expulsion and thus in a sense discretionary, were a reimbursable mandate. The holding did not reach that issue, as the court decided the costs were attributable to federal due process requirements. (*Id.* at pp. 888–890.) Nonetheless, the Supreme Court discussed at length the reach of *City of Merced*'s "voluntary" rationale, and rejected extending it whenever some element of discretion in incurring the cost existed, e.g., in deciding how many firefighters to hire into a fire department. (*San Diego Unified School Dist.*, at pp. 886–888.)

"The Department and the Commission argue . . . that any right to reimbursement for hearing costs triggered by discretionary expulsions—even costs limited to those procedures that assertedly exceed federal due process hearing requirements—is foreclosed by virtue of the circumstance that when a school pursues a discretionary expulsion, it is not acting under compulsion of any law but instead is exercising a choice. In support, the Department and the Commission rely upon *Kern High School Dist., supra*, 30 Cal.4th 727, and *City of Merced*[, *supra*,] 153 Cal.App.3d 777 . . . ." (*San Diego Unified School Dist., supra*, 33 Cal.4th at p. 885.)

The Supreme Court went on to state, in *San Diego Unified School Dist.*:

"The District and amici curiae on its behalf (consistently with the opinion of the Court of Appeal below) argue that the holding of *City of Merced, supra*,

153 Cal.App.3d 777, should not be extended to apply to situations beyond the context presented in that case and in *Kern High School Dist., supra,* 30 Cal.4th 727. The District and amici curiae note that although any particular expulsion recommendation may be discretionary, as a practical matter it is inevitable that some school expulsions will occur in the administration of any public school program.

"Upon reflection, we agree with the District and amici curiae that there is reason to question an extension of the holding of *City of Merced* so as to preclude reimbursement under article XIII B, section 6 of the state Constitution and Government Code section 17514, whenever an entity makes an initial discretionary decision that in turn triggers mandated costs. Indeed, it would appear that under a strict application of the language in *City of Merced*, public entities would be denied reimbursement for state-mandated costs in apparent contravention of the intent underlying article XIII B, section 6 of the state Constitution and Government Code section 17514 and contrary to past decisions in which it has been established that reimbursement was in fact proper. For example, as explained above, in *Carmel Valley [Fire Protection Dist. v. State of California], supra,* 190 Cal.App.3d 521, an executive order requiring that county firefighters be provided with protective clothing and safety equipment was found to create a reimbursable state mandate for the added costs of such clothing and equipment. (*Id.,* at pp. 537–538.) The court in *Carmel Valley [Fire Protection Dist. v. State of California]* apparently did not contemplate that reimbursement would be foreclosed in that setting merely because a local agency possessed discretion concerning how many firefighters it would employ—and hence, in that sense, could control or perhaps even avoid the extra costs to which it would be subjected. Yet, under a strict application of the rule gleaned from *City of Merced, supra,* 153 Cal.App.3d 777, such costs would not be reimbursable for the simple reason that the local agency's decision to employ firefighters involves an exercise of discretion concerning, for example, how many firefighters are needed to be employed, etc. We find it doubtful that the voters who enacted article XIII B, section 6, or the Legislature that adopted Government Code section 17514, intended that result, and hence we are reluctant to endorse, in this case, an application of the rule of *City of Merced* that might lead to such a result." (*San Diego Unified School Dist., supra,* 33 Cal.4th at pp. 887–888, fns. omitted.)

## II. Costs of POBRA Are Incurred Voluntarily by School Districts and Special Districts That Are Permitted but Not Required to Employ Peace Officers

The result of the cases discussed above is that, if a local government participates "voluntarily," i.e., without legal compulsion or compulsion as a

practical matter, in a program with a rule requiring increased costs, there is no requirement of state reimbursement. The Commission concedes there is no legal compulsion for the school and special districts in issue to hire peace officers. As related, *Kern High School Dist.* suggests "involuntarily" can extend beyond "legal compulsion" to "compelled as a practical matter to participate." (*Kern High School Dist., supra,* 30 Cal.4th at p. 748.) However, the latter term means facing " 'certain and severe . . . penalties' such as 'double . . . taxation' or other 'draconian' consequences" and not merely having to "adjust to the withdrawal of grant money along with the lifting of program obligations." (*Id.* at p. 754.) There is nothing in this record to show that the school and special districts in issue are practically compelled to hire peace officers.

The Commission points to two considerations to overcome the rule that participation in a voluntary program means additional costs are not mandates. The first is that the Legislature has declared that application of POBRA procedures to all public safety officers is a matter of statewide concern. The second consideration is that the Legislature has promulgated various rights to public safety[5] and rights and duties of peace officers,[6] which it is claimed, recognize "the need for local government entities to employ peace officers when necessary to carry out their basic functions." Neither consideration persuasively supports the claim of practical compulsion.

The consideration that the Legislature has determined that all public safety officers should be entitled to POBRA protections is immaterial. It is almost always the case that a rule prescribed by the Legislature that applies to a voluntary program will, nonetheless, be a matter of statewide concern and application. For example, the rule in *Kern High School Dist.* was that any district in the state that participated in the underlying funded educational programs was required to abide by the notice of meetings and agenda posting requirements. When the Legislature makes such a rule, it only says that if you participate you must follow the rule. This is not a rule that bears on compulsion to participate. (Cf. *Kern High School Dist., supra,* 30 Cal.4th at p. 743 [the proper focus of a legal compulsion inquiry is upon the nature of claimants' participation in the underlying programs, not that costs incurred in complying with program conditions have been legally compelled].)

---

[5] E.g., article I, section 28, subdivision (f) (announcing a right to attend grade school campuses that are safe); Education Code section 38000, subdivision (a) (authorizing school boards to hire peace officers to ensure safety of pupils and personnel); and Education Code section 72330, subdivision (a) (authorizing a community college district to employ peace officers as necessary to enforce the law on or near campus).

[6] E.g., Penal Code sections 830.31 through 830.35, 830.37 (powers of arrest extend statewide), and 12027 (permitting peace officers to carry concealed weapons).

Similarly, we do not see the bearing on a necessity or practical compulsion of the districts to hire peace officers, of any or all the various rights to public safety and duties of peace officers to which the Commission points. If affording those rights or complying with those duties as a practical matter could be accomplished only by exercising the authority given to hire peace officers, the Commission's argument would be forceful. However, it is not manifest on the face of the statutes cited nor is there any showing in the record that hiring its own peace officers, rather than relying upon the county or city in which it is embedded, is the only way as a practical matter to comply.

The Commission submits that this case should be distinguished from *City of Merced* and *Kern High School Dist.* because the districts "employ peace officers when necessary to carry out the essential obligations and functions established by law." However, the "necessity" that is required is facing " 'certain and severe . . . penalties' such as 'double . . . taxation' or other 'draconian' consequences." (*Kern High School Dist., supra,* 30 Cal.4th at p. 754, quoting *City of Sacramento v. State of California, supra,* 50 Cal.3d at p. 74.) That cannot be established in this case without a concrete showing that reliance upon the general law enforcement resources of cities and counties will result in such severe adverse consequences.

■ The Commission notes that *Carmel Valley Fire Protection Dist. v. State of California* characterizes police protection as one of " 'the most essential and basic functions of local government.' " (*Carmel Valley Fire Protection Dist. v. State of California, supra,* 190 Cal.App.3d at p. 537, quoting *Verreos v. City and County of San Francisco* (1976) 63 Cal.App.3d 86, 107 [133 Cal.Rptr. 649].) However, that characterization is in the context of cities, counties, and districts that have as an ordinary, principal, and mandatory duty the provision of policing services within their territorial jurisdiction. A fire protection district perforce must hire firefighters to supply that protection.

Thus, as to cities, counties, and such districts, new statutory duties that increase the costs of such services are prima facie reimbursable. This is true, notwithstanding a potential argument that such a local government's decision is voluntary in part, as to the number of personnel it hires. (See *San Diego Unified School Dist., supra,* 33 Cal.4th at p. 888.) A school district, for example, has an analogous basic and mandatory duty to educate students. In the course of carrying out that duty, some "discretionary" expulsions will necessarily occur. (*Id.* at p. 887, fn. 22.) Accordingly, *San Diego Unified School Dist.* suggests additional costs of "discretionary" expulsions should not be considered voluntary. Where, as a practical matter, it is inevitable that certain actions will occur in the administration of a mandatory program, costs

attendant to those actions cannot fairly and reasonably be characterized as voluntary under the rationale of *City of Merced.* (See *San Diego Unified School Dist., supra*, 33 Cal.4th at pp. 887–888.)

■ However, the districts in issue are authorized, but not required, to provide their own peace officers and do not have provision of police protection as an essential and basic function. It is not essential unless there is a showing that, as a practical matter, exercising the authority to hire peace officers is the only reasonable means to carry out their core mandatory functions. As there is no such showing in the record, the Commission erred in finding that POBRA constitutes a state-mandated program for school districts and the special districts identified in Government Code section 3301. Similarly, the superior court erred in concluding as a matter of law that, "[a]s a practical matter," the employment of peace officers by the local agencies is "not an optional program" and "they do not have a genuine choice of alternative measures that meet their agency-specific needs for security and law enforcement . . . ."

## DISPOSITION

The judgment is reversed. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3), (5).)

Blease, J., concurred.

**SCOTLAND, P. J.,** Concurring.—The Public Safety Officers Procedural Bill of Rights Act (POBRA; Gov. Code, § 3300 et seq.) requires that peace officers employed by state and local governments must be provided with procedural rights and protections when they are subjected to investigation, interrogation, or discipline.

In this case, both the Commission on State Mandates and the trial court concluded that as to local school districts and special districts which are permitted by statute, but not required, to employ peace officers, the requirements of POBRA are a reimbursable mandate within the meaning of article XIII B, section 6 of the California Constitution, which compels the state to bear the costs of new mandates imposed on local governments.

The Commission on State Mandates reasoned that finding POBRA requirements are not reimbursable mandates would conflict with various laws that require local districts to provide safe school environments for students.

The trial court held the state must reimburse local school districts and special districts for the cost of POBRA requirements because, "[a]s a practical matter, the establishment of a police department and the employment of peace officers by school districts, community college districts and other local agencies is not an optional program . . ."; "they do not have a genuine choice of alternative measures that meet their agency-specific needs for security and law enforcement, such as a large urban school district's need for security and police officers to supplement city police or a municipal water district's need for park rangers with the authority and powers conferred upon peace officers to issue citations and make arrests in district recreational facilities."

My colleagues disagree with the commission and the trial court. They conclude that because the local districts are not required to employ peace officers, and since there was no showing that exercising the authority to hire peace officers is the only reasonable means to carry out the districts' core mandatory functions, POBRA is not a reimbursable mandate as to those districts.

My instinct tells me the trial court was right in concluding that, even if such local districts are not compelled by law to hire peace officers to perform the districts' core functions, they must do so "as a practical matter." However, instinct is insufficient to support a legal conclusion.

As the Department of Finance points out, the administrative record "is silent concerning the law enforcement needs and practices of [K-12] school districts and special districts," and there is "no evidence showing that K-12 school districts cannot meet the safe schools requirement by relying on or contracting with city and county law enforcement." Indeed, as the department notes, the trial court "correctly observed that one could not know, 'based on facts in this administrative record[,] that there is any law enforcement problem in any school in the State or the police have failed to provide adequate police services.' "

In sum, the department persuasively argues: "Although state law authorizes these districts to hire peace officers, it does not require them to do so. Neither does state law penalize the districts in any way if they decide not to hire peace officers. Thus, state law does not legally or practically compel the districts to hire peace officers. And the districts are not entitled to reimbursement merely because their discretionary decision to hire officers triggers [POBRA]-related costs."

Accordingly, I agree with my colleagues that the California Supreme Court precedent discussed in their opinion compels us to conclude that local districts' compliance with POBRA as to peace officers they employ is not a reimbursable state mandate because such districts are not required by law to employ peace officers and there is nothing in the record to support a finding that they are "practically" required to establish police departments and hire peace officers. Therefore, I concur in the opinion.